[Cite as *In re A.W.*, 2015-Ohio-407.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.W.

Court of Appeals No. L-14-1205

Trial Court No. 14240376

**DECISION AND JUDGMENT**

Decided: February 4, 2015

* * * * *

Stephen D. Long, for appellant.

Shelby J. Cully, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} This is an appeal from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated all parental rights and responsibilities and awarded permanent custody of the child, A.W., to Lucas County Children's Services ("LCCS"). For the reasons that follow, we affirm.

{¶ 2} This case began with the filing of a complaint in dependency, neglect, and abuse by appellee, LCCS, on May 20, 2014. LCCS requested that the trial court permanently terminate all parental rights as to the mother, J.L., and the father, E.W., and to grant permanent custody of A.W. to the agency. At the time of filing, A.W. was just six days old, having been born on May 14, 2014.

{¶ 3} Following a two day trial, the lower court granted permanent custody of A.W. to LCCS, and J.L. appealed. E.W. did not appeal. Accordingly, the issues discussed herein are limited primarily to the evidence presented relative to J.L.'s parental rights.

**Facts and Procedural History**

{¶ 4} J.L. (hereinafter "appellant") has a history of drug related convictions and substance abuse problems. By way of relevant history, appellant was arrested on February 17, 2012, for possession and trafficking in heroin, both fifth degree felonies. In lieu of prison, appellant was incarcerated at the Lucas County Correctional Treatment Facility ("CTF") from December 17, 2012 until July 17, 2013. CTF provides substance abuse treatment to non-violent felony offenders.

{¶ 5} Once released from CTF, appellant was extradited to Michigan where she served two and one-half weeks in jail for a drug-related offense. Upon her return to Toledo, appellant was placed on "work release." While on work release, J.L. became pregnant with A.W. She also "relapsed" by taking Percocet and heroin. In August and

2.

September 2013, appellant failed several court-ordered drug tests. She also stopped meeting with her probation officer, and a warrant was issued for her arrest.

{¶ 6} On March 8, 2014, appellant was arrested for driving without a license and for the active warrant. Subsequent drug testing revealed that appellant, now approximately seven months pregnant, tested positive for benzodiazepine, opiates and marijuana. Once again, she was sentenced to return to CTF. Two months later, on May 14, 2014, appellant was taken to a hospital where she gave birth to A.W.

{¶ 7} After his birth, A.W. exhibited some drug withdrawal symptoms, namely tremors and crying outbursts. He did not, however, test positive for drugs at that time. Still, A.W. is considered to have been exposed to drugs because appellant tested positive twice during appellant's pregnancy, in September of 2013 and in March of 2014. Moreover, appellant admitted to taking drugs between those dates.

{¶ 8} Six days after A.W.'s birth, LCCS filed a complaint in dependency and sought permanent custody of A.W. for placement in an adoptive home. Prior to the filing of this case, appellant lost permanent custody of a daughter, A.W.'s half sibling, in 2010 due to extreme domestic violence and substance abuse. In May of 2013, appellant lost legal custody of a son, A.W.'s full sibling, due to substance abuse, mental health and parenting issues.

{¶ 9} Appellant was released from CTF on June 25, 2014. Days later, she was arrested for failure to display a license while driving in Toledo. On July 7, 2014, appellant tested positive for opiates. Appellant claimed that she took "Tylenol with

3.

codeine" for pain after a tooth extraction. Appellant explained that she "held off" as long as she could but the pain was too severe.

{¶ 10} On July 11, 2014, an adjudicatory hearing was held on the issue of A.W.'s dependency. Appellant was represented by counsel and stipulated to an agreed statement of facts and to a finding of dependency. The court found A.W. to be dependent and set the matter for disposition.

{¶ 11} Disposition hearings took place on August 18 and September 11, 2014. Appellant's case manager from CTF, Dawn Leiss, testified that when appellant was released from CTF on June 25, 2014, Leiss recommended that appellant's "best option to help her reunite with her children and give her more structure and more support" was to attend the aftercare program at the Aurora House. The Aurora House serves women with chronic drug and alcohol problems in addition to those with mental health issues. Appellant was "adamant" that she did not want to go to the Aurora House. Instead, against her case manager's recommendation, appellant left CTF to resume living with E.W., the father of A.W. The record indicates E.W.'s long history of drug abuse, domestic violence, and failure to engage in services.

{¶ 12} Appellant's caseworker from LCCS, Susan Hickey, also testified. Hickey testified that appellant has a long history of mental health issues including borderline personality disorder, intermittent explosive disorder, bipolar disorder, opioid and alcohol dependence, and panic disorder.

4.

**{¶ 13}** Hickey testified that it was LCCS's recommendation that permanent custody of A.W. be awarded to the agency for placement in an adoptive home. Hickey explained that the recommendation was based upon a "pattern of behavior" exhibited by appellant, which included five years of substance abuse and, until very recently, her failure to engage in services for mental health, substance abuse, and domestic violence.

**{¶ 14}** Hickey testified that A.W. was placed with his maternal great aunt and uncle who wished to adopt him. The guardian ad litem, Emily Richter ("GAL"), concurred. The GAL described A.W. as "very much loved" and "very bonded" to his relatives. The GAL opined that granting permanent custody to LCCS was in A.W.'s best interests.

**{¶ 15}** Appellant testified at great length about her efforts to turn her life around. For example, as of the hearing date, she claimed that she was no longer residing with E.W., had rented a single apartment, and had a self-supporting job at Tony Packo's Restaurant. Also, upon her release from CTF in June of 2014, she voluntarily sought treatment with Alcoholic Anonymous and Heroin Anonymous. To assist her in the recovery process, appellant obtained a sponsor with a long history of sobriety. On her own initiative, appellant sought treatment in domestic violence and anger management programs and attended a mental health consultation for purposes of resuming treatment. Appellant called the directors of the domestic violence and anger management programs, both of whom verified appellant's active participation in her own recovery.

5.

**{¶ 16}** Appellant denied that she suffers from intermittent explosive disorder or personality disorder but agrees with the depression, anxiety and bipolar disorder diagnoses. She estimated that she has struggled with sobriety for more than five years.

**{¶ 17}** At the conclusion of the dispositional hearing, the court found, pursuant to R.C. 2151.414(B)(1)(a), by clear and convincing evidence, that A.W. cannot be placed with either of his parents within a reasonable time and should not be placed with either parent. In reaching that conclusion, the trial court relied upon R.C. 2151.414(E)(2), concluding that the parents' chemical dependency and mental health were so severe that it rendered them unable to provide an adequate permanent home for the child at present and, as anticipated, within one year. The court also found, pursuant to R.C. 2151.414(E)(11), that appellant had her parental rights involuntarily terminated with respect to A.W.'s sibling and that she had failed to show by clear and convincing evidence that she could provide a legally secure placement for A.W. The court found relevant that appellant "continues to struggle with sobriety, has not stabilized her mental health, continues to be involved in offenses that could result in incarceration; and only recently ended a relationship in which there was domestic violence." Finally, the court found, again by clear and convincing evidence, that it was in A.W.'s best interest to grant permanent custody to LCCS. The court's judgment entry was journalized on September 24, 2014.

**{¶ 18}** Appellant filed a pro se notice of appeal on September 30, 2014, and was appointed appellate counsel. Appellant raises four assignments of error.

6.

**Appellant's Assignments of Error**

A.  THE COURT FAILED TO ADEQUATELY INQUIRE AS TO THE VOLUNTARINESS OF MOTHER'S STIPULATION TO THE FACTS OF THE COMPLAINT FOR PERMANENT CUSTODY, THEREBY VIOLATING APPELLANT'S DUE PROCESS RIGHTS.  [JUV.R. 29].

B.  THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

C.  THE SHIFTING OF BURDEN CONTAINED IN R.C. 2151.414(E)(11) VIOLATES THE DUE PROCESS REQUIREMENTS SET FORTH IN THE 14TH AMENDMENT AND IN SANTOSKY II V. KRAMER, 455 U.S. 745, 102 S.CT. 1388, 71 L.ED.2D 599 (1982), AND R.C. 2151.414(E)(11) IS UNCONSTITUTIONAL ON ITS FACE AS APPLIED HEREIN.

D.  MOTHER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE HER TRIAL COUNSEL FAILED TO CONTEST THE CONSTITUTIONALITY OF R.C. 2151.414(E)(11).

**Law and Analysis**

**1.  The Trial Court's Finding of Dependency**

{¶ 19} In her first assignment of error, appellant argues that the trial court violated Juv.R. 29 by failing to assure that her stipulation that A.W. was a "dependent child," as that term is defined by R.C. 2151.04, was voluntarily given.

7.

{¶ 20} Juv.R. 29 governs adjudicatory hearings before a juvenile court. The rule requires the court to perform certain duties at the beginning of a hearing. Juv.R. 29(D) applies to admissions. It provides,

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶ 21} At the July 11, 2014 adjudicatory hearing, the following exchange took place between the court and appellant:

THE COURT: You both have good legal counsel, but I want to make sure for the record that you understand what you're giving up today by agreeing to stipulations here that they just read into the record. Do you, first of all, understand that you do have a right to a hearing on the issue of adjudication? In other words, whether [A.W.] is a dependent child?

* * *

8.

[Appellant]:  Yes.

THE COURT:  And at that hearing [the prosecutor] would have to prove by clear and convincing evidence that that is the case; do you understand?

[Appellant]:  Yes

* * *

THE COURT:  Okay.  By agreeing to this there won't be an open issue with regard to whether [A.W.] is dependent.  Instead, we'll be going to trial on the issue of what should happen next with [A.W.] in his placement; do you understand that?

[Appellant]:  Yes.

* * *

THE COURT:  Okay.  Are either of you right now under the influence of any medications, drugs or alcohol that would -- that would keep you from having a clear head as to what you're doing today?

[Appellant]:  No, Your Honor.

* * *

THE COURT:  Has anyone promised you anything or pressured you or threatened you to do this today?

* * *

[Appellant]:  No.

* * *

THE COURT: All right. Well, based upon the stipulations read into the record and my discussion with both parties of the record, I do find that they are fully aware of the consequences and are competent to make the decision to waive their right to a hearing on the adjudication issue, and I do find [A.W.] to be a dependent child.

{¶ 22} The trial court's judgment entry, finding A.W. to be dependent, was filed, journalized and served upon the parties on August 14, 2014.

{¶ 23} The August 14, 2014 adjudication order was a final order. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 300 N.E. 2d 607, ¶ 18 ("[A]n appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)."). Pursuant to App.R. 4(A), appellant had 30 days, until September 13, 2014, to appeal the trial court's judgment. Appellant's notice of appeal was not filed until September 30, 2014. Therefore, the notice of appeal is untimely as to appellant's first assignment of error.

{¶ 24} In a factually similar case, the mother argued that the trial court failed to adequately inquire as to whether her stipulation to a finding of dependency was voluntary. *In re T.H.,* 6th Dist. Lucas No. L-09-1096, 2009-Ohio-4409. As in this case, the mother did not appeal the dependency finding until after the disposition phase of the

case. We denied the mother's challenge to the adjudicatory ruling on the basis that it was filed "clearly beyond" the 30 day period set forth in App.R. 4(A). *Id.* at ¶ 36.

{¶ 25} Notwithstanding the untimeliness of the appeal, we also find that the trial court substantially complied with the procedural safeguards set forth in Juv.R. 29(D). "The trial court must substantially comply with Juv.R. 29(D), although strict compliance is preferred." *In re R.H.,* 6th Dist. Lucas Nos. L-11-1204, L-11-1205, L-11-1206, 2012-Ohio-3510, ¶ 9 citing *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 113. "[S]ubstantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea." *Id.* at ¶ 113.

{¶ 26} Here, the trial judge specifically asked appellant whether she understood what she was "giving up" by stipulating to A.W.'s dependency. That is, the trial judge confirmed that appellant understood that she was waiving her right to a hearing, at which LCCS would have to prove A.W.'s dependency with clear and convincing evidence. The judge elaborated and confirmed with appellant that if she admitted to dependency, then the matter would proceed to "what should happen next" with A.W.'s placement. Finally, the trial court confirmed that appellant's stipulation was willingly made, free from coercion, threats, promises and not while under the influence of medication, drugs, or alcohol.

{¶ 27} "The issue is not whether the judge strictly complied with rote, but whether the parties adequately understood their rights and the effect of their admissions." *In re Clark*, 141 Ohio App. 3d 55, 59-60, 749 N.E.2d 833 (8th Dist. 2001). The record

11.

indicates that appellant was aware of the consequences of the stipulation, namely that A.W. would be adjudged dependent without any further hearing. We find that the trial court substantially complied with Juv.R. 29(D).

{¶ 28} For these reasons, appellant's first assignment of error is not well-taken.

## 2. The Manifest Weight of the Evidence

{¶ 29} A parent's right to raise her children is a fundamental right. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. The interest in the care, custody, and control of one's children is "one of the oldest of the fundamental liberty interests recognized in American law." *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 39, citing *Troxel,* 530 U.S. at 65. Terminating the right to raise one's children strikes at the core of the parent-child relationship. Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶ 30} A juvenile court may award permanent custody of a child to a public children services agency where the court finds, by clear and convincing evidence, the existence of one of the four factors listed in R.C. 2151.414(B)(1)(a) through (d) and that it is in the best interest of the child to grant permanent custody to the agency. *In re C.J.,* 6th Dist. Lucas No. L-13-1037, 2013-Ohio-3056, ¶ 12; R.C. 2151.414(B)(1).

12.

{¶ 31} Here, the trial court relied upon R.C. 2151.414(B)(1)(a) which requires a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents.

{¶ 32} R.C. 2151.414(E) directs a court to "enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" where it finds by clear and convincing evidence that "one or more" of the factors listed under R.C. 2151.414(E) exist.

{¶ 33} As discussed, the trial court relied R.C. 2151.414(E)(2) and (11) in reaching its conclusion. Finally, the court also found, by clear and convincing evidence, that it is in A.W.'s best interest to grant permanent custody to LCCS.

{¶ 34} In her second assignment of error, appellant argues that the termination of her parental rights was against the manifest weight of the evidence. Where a trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case, the judgment will not be reversed on appeal on the ground that it is against the weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 35} Proof of the existence of a factor enumerated in R.C. 2151.414(B)(1) and proof that an award of permanent custody is in the child's best interest must be made by clear and convincing evidence. R.C. 2151.414(B)(1) and (E). The standard of clear and convincing evidence requires proof that "will produce in the mind of the trier of facts a

13.

firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 36} We first consider the trial court's decision with regard to appellant's chronic mental illness and chemical dependency. R.C. 2151.414(E)(2) provides,

> (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 37} Appellant complains that LCCS failed to call any mental health providers to testify. Though true, the medical records admitted into evidence demonstrate appellant's long-standing mental health problems. We specifically note a February 29, 2012 report from Barbara J. Laforest, M.D., who diagnosed appellant with depression, bipolar disorder, and alcohol abuse. Moreover, the trial court found it relevant that in 2013 appellant stopped attending her mental health treatment sessions and unilaterally stopped taking her medication. The trial court also relied upon appellant's very recent return to a mental health provider as evidence of her inability, at present, and as anticipated within one year, to provide an adequate permanent home for A.W.

14.

**{¶ 38}** With regard to her substance abuse, the trial court made specific findings:

[A]ppellant was diagnosed with Opioid, Cannabis and Alcohol Dependence. [Appellant] testified that she had been struggling with substance abuse for approximately five years. [Appellant] was referred to substance abuse treatment in 2010, but at that time would not acknowledge she had a substance abuse problem. She began substance abuse treatment in December, 2012 after she was placed in [CTF] * * *. Still, after substance abuse treatment at CTF in June, 2013 she continued to test positive for opiates. [Appellant] testified that she relapsed on heroin in September, 2013. [Appellant] further testified that she tested positive for heroin and marijuana in March of 2014 when she was again arrested.

[Appellant] was sent back to substance abuse treatment at CTF in March, 2014 and remained in treatment until June, 2014. In July of 2014, shortly after she was released from CTF, [appellant] again tested positive for opiates. [Appellant] testified that she took an opiate that was prescribed to her for a dental procedure. [The CTF case manager] testified that taking the prescribed opiate was against treatment recommendations.

[Appellant] is again linked with substance abuse treatment. [Appellant] testified that she obtained a sponsor and established a narcotics' anonymous home group. [Appellant], however, has only been sober for approximately three months since being released from CTF. [Appellant]

testified that her longest period of sobriety was approximately one year. Further, [appellant] chose to put her sobriety at risk by taking an opiate based medication.

The Court finds that [appellant's] sobriety is new and that [appellant] is not stable in her substance abuse treatment or mental health treatment to a degree that she could care for this child now or as anticipated within one year.

{¶ 39} To her credit, appellant is now actively engaged in the recovery process. Unfortunately, her failure to do so sooner prevented the trial court from determining whether she would again relapse as she has done in the past. We conclude that there is competent, credible evidence in the record supporting a firm conviction or belief that appellant suffers from chronic mental health and chemical dependency that is so severe that it makes her unable to provide an adequate permanent home for A.W. at the time of judgment and, as anticipated, within one year after the hearing on the motion for permanent custody.

{¶ 40} Under R.C. 2151.414(B)(1)(a), the applicability of even one R.C. 2151.414(E) factor establishes a finding that the child cannot be placed with his parents within a reasonable time or should not be placed with his parents. Therefore, we do not address whether such a finding is equally available under R.C. 2151.414(E)(11) as the issue is rendered moot. *See* App.R. 12(A)(1)(c). Under R.C. 2151.414(E), the existence of "any one" of the factors listed in the statute is sufficient to support a finding that the

16.

child cannot be placed with his parents within a reasonable time or should not be placed with his parents. *See In re C.J.,* 6th Dist. Lucas No. L-13-1037, 2013-Ohio-3056, ¶ 28.

{¶ 41} Next, we evaluate the second prong, whether an award of permanent custody is in the best interests of the child. R.C. 2151.414(D)(1) provides:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive

twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 42} In its judgment entry, the trial court relied upon the following factors in finding, by clear and convincing evidence, that it was in A.W.'s best interest to grant permanent custody to LCCS:  (1) that A.W. was placed at a relative's home within days of his birth who are willing to adopt him; (2) that due to A.W.'s exposure to drugs, he could develop special needs at some point in the future; (3) that A.W. is in need of a legally secure placement that can only be achieved with an award of permanent custody to LCCS; and (4) that the GAL conducted an independent investigation and concurs with the recommendation that permanent custody is in A.W.'s best interest.

{¶ 43} Indeed, the GAL testified, "I commend mom, really, for putting forth this effort to try to better herself.  I think she's really on the right path.  I just don't believe there is enough time for her to turn her life around * * * that it won't affect [A.W.] negatively.  I think he needs a secure placement now."

18.

{¶ 44} We have reviewed the record and find competent, credible evidence exists to support the trial court's findings under R.C. 2151.414(D)(1) to establish a firm belief or conviction that an award of permanent custody to LCCS is in the best interest of the child.

{¶ 45} Accordingly we conclude that the trial court's determination to award permanent custody of A.W. to LCCS is not against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken.

### 3. The Constitutionality of R.C. 2151.414(E)(11)

{¶ 46} In her third assignment of error, appellant argues that R.C. 2151.414(E)(11) is unconstitutional. Appellant argues,

> R.C. 2151.414(E)(11) clearly shifts the burden of proof, relieving the Agency of any responsibility to show anything where the Agency had previously succeeded in terminating the parental rights of the parent in a prior action. This is fundamentally unfair on its face. The [sic] is no res judicata with regard to a person's parenting ability over time, which is essentially what this statute tries to establish.

{¶ 47} In the alternative, appellant argues that requiring a parent to rebut the presumption of unfitness with clear and convincing evidence is overly burdensome and that the lesser standard, preponderance of the evidence, should apply.

19.

{¶ 48} We begin with the proposition that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt*." State ex rel. Dickman v. Defenbacher,* 164 Ohio St. 142, 147, 128 N.E.2d 59 (1955).

{¶ 49} Second, appellant raises these constitutional challenges for the first time on appeal. When a constitutional challenge is not raised before the trial court, it ordinarily will not be addressed for the first time on appeal. *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. The "failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan,* 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. Because appellant did not raise the constitutional challenge below, we need not consider it now.

{¶ 50} Appellant's third assignment of error is not well-taken.

### 4. The Alleged Ineffective Assistance of Trial Counsel

{¶ 51} In her final assignment of error, appellant argues that her trial counsel's failure to challenge the constitutionality of R.C. 2151.414(E)(11) amounts to ineffective assistance of counsel. Such a claim is evaluated under the deficiency standard set forth in

20.

*State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), followed.)

> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

**{¶ 52}** Ohio law presumes the competence of a properly licensed attorney. *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 72. There is thus "a strong presumption that counsel's performance falls within the wide range of reasonable professional performance." *Bradley* at 142. Even if counsel's performance fell below an objective standard of reasonable representation, the level of prejudice must be such that, but for counsel's deficiencies and errors there is a reasonable probability that the trial's outcome would have been different. *Id.* Trial strategies and tactical choices do not constitute ineffective assistance merely because in hindsight they appear questionable or ineffective. *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

21.

**{¶ 53}** Appellant concedes the absence of any controlling authority to support her constitutional arguments, and we specifically declined to find that R.C. 2151.414(E)(11) is unconstitutional. Therefore, we would be hard-pressed to find that appellant was prejudiced by her trial counsel's failure to raise an argument rejected by this court today.

**{¶ 54}** In sum, appellant has failed to show, to a reasonable probability, that if her trial counsel had argued the constitutionality of R.C. 2151.414(E)(11), that the result of this case would have been different. As a matter of law therefore, appellant's trial counsel cannot be said to have been ineffective for her failure to raise the issue. *In re Brooks,* 10th Dist. Franklin Nos. 04AP-164, 04AP-165, 04AP-201, 04AP-202, 2004-Ohio-3887, ¶ 32 (failure to challenge constitutionality of permanent custody statute did not constitute ineffective assistance of counsel). Appellant's fourth assignment of error is found not well-taken.

**{¶ 55}** On due consideration, we find clear and convincing evidence supports the judgment terminating appellant's parental rights and awarding permanent custody to LCCS. Appellant's four assignments of error are found not well-taken. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

22.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.