[Cite as *In re C.W.*, 2016-Ohio-5357.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re C.W.

Court of Appeals No. L-16-1049

Trial Court No. 15246085

### DECISION AND JUDGMENT

Decided: August 12, 2016

* * * * *

Stephen D. Long, for appellants.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellants, M.W., the mother of C.W., and B.W., the father of C.W., and granted permanent custody of C.W. to appellee, Lucas County Children Services. For the reasons that follow, we affirm.

{¶ 2} C.W. was born in February of 2015.  At the time of C.W.'s birth, M.W. was married to G.M.  DNA test results subsequently excluded G.M. as C.W.'s biological father and established B.W. was C.W.'s biological father.  M.W. and B.W. have never been married to each other.

{¶ 3} On February 23, 2015, a complaint in dependency and neglect was filed regarding C.W.  That same day, a motion for shelter care was filed and a shelter care hearing was held.  Temporary custody of C.W. was awarded to appellee.

{¶ 4} On February 27, 2015, appellee filed an amended complaint in dependency and neglect with a request that permanent custody of C.W. be awarded to appellee.

{¶ 5} On June 1, 2015, appellee filed another amended complaint in dependency and neglect again with a request that permanent custody of C.W. be awarded to appellee.

{¶ 6} On September 10, 2015, appellee filed a motion for permanent custody of C.W.

{¶ 7} On October 22, 2015, S.W., B.W.'s sister and C.W.'s aunt, filed a pro se motion for legal custody and to intervene.  That motion was heard on December 1, 2015, and denied.  S.W. did not appeal the denial of her motion for custody or motion to intervene.

{¶ 8} The permanent custody hearing for C.W. was heard before the trial court on March 4, 2016, and in a judgment entry dated March 14, 2016, appellee was granted permanent custody of C.W.  Appellants appealed.

2.

**{¶ 9}** On June 3, 2016, appellants' appointed counsel filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel asserted after thoroughly reviewing the transcript of proceedings from the trial court as well as the applicable case law, no meritorious assignments of error could be presented.  Counsel did, however, submit two potential assignments of error:

> I.  The trial court erred in finding that permanent custody was supported by clear and convincing evidence; and the grant of permanent custody was against the manifest weight of the evidence.

> II.  The shifting of burden to mother contained in R.C. 2151.414(E)(11) violates the due process requirements set forth in the 14th Amendment and in *Santosky II v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and R.C. 2151.414(E)(11) is unconstitutional on its face as applied herein.

**{¶ 10}** The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978).  In *Anders*, the United States Supreme Court found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw.  *Anders* at 744.  This request must be accompanied by a brief identifying anything in the record which could arguably support the appeal.  *Id.*  In addition, counsel must furnish the client with a copy of the brief, request to withdraw and

3.

allow the client sufficient time to raise any matters the client so chooses. *Id.* Once these requirements have been satisfied, the appellate court must conduct a full examination of the proceedings held below to decide if the appeal is indeed frivolous. *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law. *Id.*

{¶ 11} Here, appellants' counsel fulfilled the requirements set forth in *Anders*. We note appellants have not filed pro se briefs or otherwise responded to counsel's request to withdraw. We shall proceed with an examination of the potential assignments of error set forth by appellants' counsel as well as the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.

## Permanent Custody Hearing

{¶ 12} Danielle Stroble, a caseworker for appellee, testified she was assigned to this case when C.W. was born, as M.W. was incarcerated for an attempted felonious assault conviction. Stroble testified M.W. admitted using crack cocaine, smoking cigarettes and drinking alcohol while pregnant with C.W., and when C.W. was born, he experienced symptoms including tremors. Following a short stay in the hospital, C.W. was placed with a foster family and has lived with this foster family ever since. While C.W. does not have any special needs, he is being monitored due to concerns of fetal alcohol syndrome.

4.

**{¶ 13}** Stroble testified she has had contact with M.W. through M.W.'s case manager while M.W. is incarcerated. M.W. always asks about C.W. and conveys that she loves C.W. and wants a second chance to raise him. M.W. also told Stroble all of the progress she is making while in prison and what services she is attending and completing like A Positive Parenting Program, Changing Attitudes and Cage the Rage. Stroble stated M.W. is expected to be released from prison in December 2016.

**{¶ 14}** Stroble testified she first worked with M.W. in 2011 on a case involving C.W.'s two half-siblings. In the 2011 case, a case plan was developed for the family and services were offered to M.W. for trauma and mental health treatment, substance abuse treatment, anger management, housing and parenting. M.W. had been diagnosed with bipolar, anxiety, post-traumatic stress disorder and depression, so counseling and trauma therapy were recommended. Stroble noted M.W. had suffered a lot of trauma throughout her life, but M.W. did not want to partake in trauma therapy because she did not want to talk about it or rehash it. Since M.W. was abusing alcohol and marijuana at that time, M.W. was referred to and engaged in intensive outpatient treatment at Unison, until she was unsuccessfully terminated in April of 2013.

**{¶ 15}** Stroble testified permanent custody of M.W.'s two children was ultimately awarded to appellee due to M.W.'s inability to provide a safe environment for the children. One of the children, B., was adopted by the foster family which provides care for C.W. The foster family would also like to adopt C.W. if permanent custody is

5.

awarded to appellee. Stroble observed C.W. and B. in the home and they were doing very well.

{¶ 16} Stroble testified M.W.'s substance abuse has worsened since 2011, as M.W. admitted using crack cocaine as well as alcohol. M.W.'s criminal behavior has also worsened, as her criminal record includes charges for assault, petty theft, aggravated menacing, soliciting and disorderly conduct.

{¶ 17} With respect to B.W., Stroble testified she met him in May 2015, when he was in court. At the time, he was incarcerated, but on a furlough. Stroble gave B.W. her contact information and told him to call her when he was released so an assessment could be conducted and services and visitation could be arranged. B.W. did not contact Stroble when he was released in June 2015. The next time Stroble had contact with B.W. was in November 2015, when she found out he was again in jail. B.W. told Stroble he did not contact her when he was released from jail because he was using crack cocaine and he was living between places. Stroble indicated B.W. had an extensive criminal history. Stroble was aware B.W. had a previous case with appellee, but she did not know the particulars of that case other than he was not the custodial parent. The concerns Stroble had regarding B.W. were that he had untreated substance abuse issues, untreated mental health issues, unstable housing and possibly parenting issues. B.W. is expected to be released from prison in December 2016. To Stroble's knowledge, B.W. has not had any contact with C.W.

6.

{¶ 18} Stroble testified when she initially talked to B.W.'s sister, S.W., S.W. was interested in C.W. if the DNA results showed B.W. was C.W.'s father. After the DNA results indicated B.W. was C.W.'s biological father, Stroble contacted S.W., but S.W. was losing her job the next day. Stroble informed S.W. when S.W. secured employment to contact Stroble. Months went by. Stroble initiated contacted with S.W. several times. The first time, S.W. still did not have a job. The next time, S.W. was employed so Stroble set up visitations once a week for one hour between C.W. and S.W., starting in October 2015. The visits were inconsistent and did not usually go well. In addition, S.W. was consistently late for the visits. Appellee was going to proceed with a home study of S.W.'s home, but S.W. decided to become a foster parent and started that process, which would include a foster parent home study. However, by March 2016, S.W. had missed several foster parenting sessions, so she still had two classes left to complete in order to become a foster parent. After those classes are completed, a foster parent worker would be assigned to S.W. and then a home study would be conducted.

{¶ 19} Stroble believed it was in C.W.'s best interest for permanent custody to be awarded to appellee. C.W. is currently in a stable environment and bonded with his caregivers and half-sibling. C.W.'s parents both have lengthy criminal histories as well as issues with substance abuse, stable housing, mental health and parenting. Stroble noted M.W.'s situation had gotten worse since 2011.

{¶ 20} M.W. testified she was incarcerated and has a release date of November 25, 2016, due to good behavior. M.W. has been involved in numerous programs and is

7.

trying to obtain her GED while in prison. M.W. stated she had been clean since October 28, 2014. She takes medication for depression and anxiety, and does not have a bipolar diagnosis. She is not in any mental health therapy. When she is released from prison, M.W. will be placed in a halfway house. M.W. stated it would not be in C.W.'s best interest for permanent custody to be awarded to appellee because M.W. is a different person and she would like a second chance to be a parent to C.W.

{¶ 21} Julie Vittles testified she was assigned to be C.W.'s CASA/guardian ad litem in February 2015, shortly after C.W. was born and placed with his foster family. Vittles visited with C.W. and the foster family beginning in February 2015, however she was not able to meet with M.W. until May 2015, when M.W. was brought back for a hearing. M.W. expressed that she loved C.W. and wanted to parent him. Vittles also met with B.W. in May 2015, and gave him her contact information, but he never contacted her.

{¶ 22} Vittles visited and observed C.W. and the foster family at least once a month since February 2015. C.W. was doing beautifully and developing normally.

{¶ 23} Vittles testified she had spoken to B.W.'s sister, S.W., several times on the phone and met S.W. and S.W.'s daughter at a home visit in early June 2015. S.W.'s home seemed appropriate. A visit was then scheduled between S.W. and C.W. on Father's Day, but it did not occur. Vittles called S.W. attempting to arrange visitation between S.W. and C.W., but S.W. told Vittles that she, S.W., did not want to communicate directly with Vittles or the foster parents. Vittles testified from May 2015

8.

to March 2016, S.W. has only seen C.W. 10 times out of 17 scheduled visits. Due to inconsistencies and noncompliance, Vittles had concerns about S.W. having a placement or beginning a relationship with C.W.

{¶ 24} Vittles reviewed various records including C.W.'s half-siblings' records with appellee, C.W.'s birth records and the arrest records for M.W., her husband and B.W. Vittles filed a report on November 20, 2015, and recommended permanent custody of C.W. be awarded to appellee. Vittles opined it would be in C.W.'s best interest for permanent custody to be awarded to appellee as C.W. is thriving and interacts well with and is bonded to his foster parents and half-sibling. Vittles noted C.W. has been in the foster home since he was five days old, and permanency and stability are very important for a child his age.

**Trial Court's Decision**

{¶ 25} In its March 14, 2016 judgment entry, the trial court thoroughly summarized the testimony of the three witnesses who testified at the permanent custody hearing. The court observed that two documents were entered into evidence during the proceedings: the guardian ad litem report, recommending permanent custody of C.W. to appellee, and the judgment entry from M.W.'s 2011 case granting permanent custody of M.W.'s other two children to appellee.

{¶ 26} The trial court found, with respect to B.W., under R.C. 2151.414(E)(1), that following the placement of C.W. outside of the home and notwithstanding reasonable case planning and diligent efforts by appellee to assist B.W. to remedy the problems that

9.

initially caused C.W. to be placed outside of the home, B.W. has failed continuously and repeatedly to substantially remedy the conditions causing C.W. to be placed outside of the home.

{¶ 27} The trial court further found, pursuant to R.C. 2151.414(E)(2), that chronic chemical dependency of B.W. is so severe that it makes him unable to provide an adequate permanent home for C.W. at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 28} The trial court further found, under R.C. 2151.414(E)(4), that B.W. has demonstrated a lack of commitment toward C.W. by failing to regularly support, visit, or communicate with C.W. when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for C.W.

{¶ 29} The trial court further found, pursuant to R.C. 2151.414(E)(10), that B.W. has abandoned C.W.

{¶ 30} The trial court further found, under R.C. 2151.414(E)(13), B.W. is repeatedly incarcerated, and the repeated incarcerations prevent him from providing care for C.W.

{¶ 31} Concerning M.W., the trial court found, under R.C. 2151.414(E)(11), she has had her parental rights involuntarily terminated with respect to a sibling of C.W., and she has failed to provide clear and convincing evidence to prove that, notwithstanding the

10.

prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.W.

{¶ 32} The trial court also found, under R.C. 2151.414(D)(1)(a), (d) and (e), that an award of permanent custody to appellee is in the best interest of C.W., as there is a possible placement in a home with C.W.'s sibling, all of C.W.'s needs are being met, C.W. is bonded with his custodians, and permanency for C.W. cannot be obtained without an award of permanent custody.

{¶ 33} Lastly, the trial court further found appellee made reasonable efforts to prevent the removal of C.W., and appellee made reasonable efforts towards a permanent plan for C.W., by working with the family and investigating the potential permanent placement.

## The Appeal

## Standard—Permanent Custody

{¶ 34} A trial court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the witnesses' testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches*

*v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Hence, a judgment supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence. *Id.*; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 35} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d), and (2) the child's best interest is served by granting permanent custody to the agency. *In re M.B.*, 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 6. Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 36} Appellants' second potential assignment of error will be addressed first.

**Second Potential Assignment of Error**

{¶ 37} In the second potential assignment of error, appellants argue the shifting of the burden to mother, in R.C. 2151.414(E)(11), violates the due process requirements in the Fourteenth Amendment and in *Santosky II v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and is unconstitutional.

{¶ 38} R.C. 2151.414 provides:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

12.

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 39} In *In re A.W.*, 6th Dist. Lucas No. L-14-1205, 2015-Ohio-407, this court addressed the same issue now raised by appellants. There, we set forth:

We begin with the proposition that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147, 128 N.E.2d 59 (1955).

Second, appellant raises these constitutional challenges for the first time on appeal. When a constitutional challenge is not raised before the trial court, it ordinarily will not be addressed for the first time on appeal. *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. The "failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 22 Ohio B. 199, 489 N.E.2d 277 (1986), syllabus. Because appellant did not raise the constitutional challenge below, we need not consider it now. *Id.* at ¶ 48-49.

{¶ 40} Here, a review of the record shows that in appellee's September 10, 2015 motion for permanent custody of C.W., appellee alleged M.W. had lost permanent custody of two other children in the past. Appellee also requested that the trial court, at

14.

the permanent custody hearing, make a finding, under R.C. 2151.414(E)(11), that M.W. has had her parental rights involuntarily terminated with respect to a sibling of C.W., and she has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, that she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.W.

{¶ 41} In addition, at the March 4, 2016 permanent custody hearing, counsel for the guardian ad litem moved the trial court to enter into evidence the permanent custody judgment entry from M.W.'s 2011 case with respect to M.W.'s two other children. M.W.'s attorney did not object to this document being admitted into evidence.

{¶ 42} Since the fact that M.W. had previously lost permanent custody of children, under R.C. 2151.414(E)(11), was raised as a basis for M.W. losing custody of C.W. well before the permanent custody hearing was held, the issue of the constitutionality of R.C. 2151.414(E)(11) should have been raised before the trial court. However, M.W. did not raise this issue before the trial court. Therefore, in accordance with our holding in *In re A.W.*, M.W.'s failure to raise this issue constitutes a waiver of this issue on appeal. Appellants' second potential assignment of error is not well-taken.

## First Potential Assignment of Error

{¶ 43} In the first potential assignment of error, appellants assert the trial court erred in finding that permanent custody of C.W. to appellee was supported by clear and convincing evidence. Appellants further submit the grant of permanent custody of C.W. to appellee was against the manifest weight of the evidence.

15.

{¶ 44} As an initial matter, we note that S.W., B.W.'s sister and C.W.'s aunt, is not a party to this appeal, nor was she a party in the proceedings before the trial court. Moreover, she did not appeal the trial court's denial of her motion to intervene in the permanent custody proceedings or the denial of her motion for legal custody, and no arguments or evidence were presented by her or on her behalf in this appeal.

{¶ 45} As to M.W., the trial court found she had had her parental rights involuntarily terminated with respect to siblings of C.W., and M.W. failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.W.

{¶ 46} A review of the record shows M.W. is incarcerated and will be released in late November 2016, to a halfway house. M.W. has been incarcerated since before C.W.'s birth. During the time she has been incarcerated, M.W. has gotten clean and has been involved in numerous programs and is trying to obtain her GED. M.W. is being released early from prison due to her good behavior. M.W. takes medication for depression and anxiety, but is not involved in any mental health therapy.

{¶ 47} M.W. lost permanent custody of two children in September 2013, over two years after a complaint in dependency, neglect and abuse was filed, which was the start of the 2011 case. These two children are C.W.'s half-siblings. During the course of the 2011 case, M.W. was offered a variety of case plan services by appellee. M.W. did participate in many of the services offered and did well for a certain amount of time.

16.

However, M.W. did not undergo trauma therapy, and ultimately was unsuccessfully terminated from outpatient substance abuse treatment following several relapses. Due to M.W.'s substance abuse, unstable housing and failure to comply with the case plan, appellee filed for and was awarded permanent custody of the two children.

{¶ 48} The record further shows after losing custody of her two children, M.W.'s substance abuse escalated from alcohol and marijuana to crack cocaine, and her criminal involvement intensified, culminating in M.W.'s prison sentence for attempted felonious assault. C.W. was born while M.W. was incarcerated. C.W. went to live in a foster home with his half-sibling while M.W. remained in prison. The record reflects that both C.W. and M.W. are doing very well. C.W. is thriving in his foster home with his foster family and M.W. has made good use of her time while well in prison, participating in programs and classes and remaining sober.

{¶ 49} After summarizing the evidence presented, including the undisputed evidence that M.W. had her parental rights involuntarily terminated with respect to two of C.W.'s half-siblings, the trial court concluded M.W. failed to present clear and convincing evidence that she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of M.W. The trial court found, under R.C. 2151.414(D)(1)(a), (d) and (e), that an award of permanent custody to appellee was in the best interest of C.W., as there was a possible placement in a home with C.W.'s sibling, all of C.W.'s needs were met, C.W. was bonded with his custodians, and permanency for C.W. cannot be obtained without an award of permanent custody.

17.

{¶ 50} Upon review, we find the record demonstrates there was clear and convincing evidence before the trial court from which it could conclude that M.W. had previously had her parental rights involuntarily terminated with respect to two children and she has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.W., and permanent custody of C.W. to appellee was in the child's best interest.

{¶ 51} We recognize the positive strides and the progress M.W. has made while in prison, as well as her continued interest in C.W. However, the record is lacking in evidence that M.W. is able to provide for C.W.'s needs, in the near future or permanently. There is no evidence of any relationship between M.W. and C.W., due to M.W.'s incarceration. There is no evidence as to how M.W. will support herself or C.W., nor is there evidence that she can provide housing for herself or C.W. after she is released from prison. We find the trial court's decision granting permanent custody of C.W. to appellee was not against the manifest weight of the evidence.

{¶ 52} Concerning B.W., the trial court found he was chronically chemically dependent and continually incarcerated. The trial court further found B.W. demonstrated a lack of commitment toward C.W. by failing to regularly support, visit or communicate with C.W., and that B.W. had, in fact, abandoned C.W. The record reveals the trial court's findings as to B.W. are not disputed in this appeal.

18.

**{¶ 53}** The record shows B.W. has untreated substance abuse issues, untreated mental health issues and unstable housing. B.W. has had no contact with C.W., and did not contact the caseworker or the guardian ad litem after he was released from incarceration in June 2015. In addition, B.W. has an extensive criminal history, is currently incarcerated, and is not expected to be released from prison until December 2016. B.W. also had a previous case with appellee.

**{¶ 54}** The record further shows awarding permanent custody of C.W. to appellee was in C.W.'s best interest. The guardian ad litem, following an independent investigation, opined that permanent custody was in C.W.'s best interest. Likewise, the caseworker recommended permanent custody of C.W. to appellee was in C.W.'s best interest.

**{¶ 55}** We find the trial court's findings that B.W. was chronically chemically dependent and continually incarcerated, demonstrated a lack of commitment toward C.W. and abandoned C.W., and that permanent custody of C.W. to appellee was in C.W.'s best interest, are all supported by clear and convincing evidence. We further find the trial court's decision to grant permanent custody of C.W. to appellee is supported by competent, credible evidence and is not against the manifest weight of the evidence. Accordingly, appellants' first potential assignment of error is not well-taken.

**{¶ 56}** Upon our own independent review of the record, we find no grounds for a meritorious appeal. Counsel's motion to withdraw is found well-taken and granted.

19.

**{¶ 57}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Stephen A. Yarbrough, J. _____

_____
James D. Jensen, P.J. _____   JUDGE
CONCUR.

_____
JUDGE