JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, C.W.,[1] appeals the trial court's decision granting permanent custody of his son, C.T., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). After a thorough review of the arguments and for reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On July 7, 2004, CCDCFS filed a complaint in the Cuyahoga County Juvenile Court, which alleged that the appellant's minor child, C.T., was abused and neglected. On September 8, 2004, the matter was heard before a magistrate. Both the appellant and C.T.'s mother ("mother") were present for the hearing. After the appellant and mother were given an opportunity to be heard, the trial court determined that clear and convincing evidence existed that C.T. was an abused child.
 {¶ 3} Because both the appellant and mother suffered from substance abuse problems, the case was transferred to the Cuyahoga County drug court program in a effort to provide them with substance abuse treatment. After attending drug court, the appellant and mother were given individual substance abuse case plans, as well as an overall family case plan. Although the drug court went to great lengths to outline a treatment program for the appellant, he failed to comply with the case plans. On April 19, 2005, the case was discharged from drug court.
 {¶ 4} On September 13, 2005, after the case was transferred back to the juvenile court, a dispositional hearing was held regarding the permanent custody of C.T. During that hearing, CCDCFS presented evidence in favor of permanent custody. C.T.'s guardian ad litem made a recommendation to the court in favor of permanent custody as well. In addition, C.T.'s mother submitted stipulations and agreements as to termination of her parental rights. After evaluating all of the evidence presented, the trial court determined that ordering C.T. into the permanent custody of CCDCFS was in the child's best interest.
 {¶ 5} The events that gave rise to the trial court's decision to grant permanent custody to CCDCFS began on July 4, 2004 when C.T. was born. At his birth, it was determined that he was addicted to the drugs that his mother used throughout her pregnancy. On July 7, 2004, after C.T. went through a drug detoxification process, CCDCFS filed a complaint alleging that he was an abused and neglected child. They also filed a request seeking permanent custody of C.T. On September 8, 2004, the matter came before a magistrate in the Cuyahoga County Juvenile Court. C.T. was adjudicated as abused, and the juvenile court referred the appellant and mother to drug court for further proceedings.
 {¶ 6} As a result of their participation in drug court, substance abuse training was recommended for both parents. The drug court recommended that mother enter REAMAR, a residential treatment facility in Akron, Ohio. It further recommended that the appellant participate in outpatient substance abuse treatment through Catholic Charities.
 {¶ 7} Although the appellant was referred to Catholic Charities for help with his substance abuse problems, he continued to use drugs and alcohol, and in September 2004, he was discharged from the program. After his discharge, CCDCFS referred him to the Fresh Start program for intensive outpatient treatment. In November 2004, after forging several meeting slips, the appellant was discharged from the Fresh Start program.
 {¶ 8} Following his discharge from Fresh Start, CCDCFS performed an assessment where it was determined that an evening treatment program would better fit his daytime employment schedule. He was referred to The Free Clinic to participate in their evening substance abuse treatment program. Although the assignment was designed to fit the appellant's employment schedule, he was discharged in April 2005 for failure to complete the program.
 {¶ 9} In late spring of 2005, the appellant participated in yet another assessment and was referred to Recovery Resources for intensive outpatient treatment. On August 9, 2005, he was discharged from Recovery Resources for failure to attend meetings. Recovery Resources issued a progress report in July 2005 stating that the appellant was "not benefitting from treatment."
 {¶ 10} On June 14, 2005, the appellant had a psychological evaluation, which recommended that he submit to random monthly urine screens for at least a year, attend AA meetings, and totally abstain from alcohol. The psychologist who performed the evaluation also recommended that reunification with C.T. should not occur until the appellant fully complied with the recommendations. Despite his case plan, appellant failed to complete any of the substance abuse treatment programs.
 {¶ 11} In addition to his failure to complete any substance abuse training, appellant also failed to participate in the domestic violence and anger management counseling prescribed in the overall family case plan. Appellant and mother were discharged from the drug court on April 19, 2005. On September 13, 2005, a dispositional hearing was held in the Cuyahoga County Juvenile Court, where it was determined that permanent custody of C.T. should be awarded to CCDCFS.
 {¶ 12} The appellant now brings this appeal asserting one assignment of error for our review.
 {¶ 13} "I. The trial court erred in granting permanent custody since none of the circumstances set forth in R.C.2151.353 were proven by clear and convincing evidence and the judgment is against the manifest weight of the evidence."
 {¶ 14} Appellant argues that the trial court erred when it granted permanent custody to CCDCFS. More specifically, he asserts that the requirements for permanent custody, as defined by R.C. 2151.353, were not proven by clear and convincing evidence, making the final judgment of the court against the manifest weight of the evidence.
 {¶ 15} It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. In reSatterwhite (Aug. 23, 2001), Cuyahoga App. No. 77071, 2001-Ohio-4137. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952),158 Ohio St. 9, 13. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. Seasons Coal Co., Inc.,
supra at 80. As the Supreme Court of Ohio has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21.
 {¶ 16} Although the appellant argues that the trial court's decision was against the manifest weight of the evidence, we do not agree. R.C. 2151.353 (A)(4) outlines the requirements necessary for an award of permanent custody:
 {¶ 17} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 18} "(4) Commit the child to the permanent custody of a public services agency or private child placing agency, if the court determines in accordance with division (E) of section2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the preceding."
 {¶ 19} When determining whether an award of permanent custody is an appropriate action, two requirements must be fulfilled. First, the child's parents must be unable to care for the child, and second, the award of permanent custody must be in the best interest of the child.
 {¶ 20} Through his actions, the appellant has demonstrated that he is completely unable to care for C.T. He was referred to four different substance abuse treatment programs and failed to complete any of them. Although he tested negative for alcohol, the appellant's substance abuse counselor at Recovery Resources issued a report documenting his progress, which stated:
 {¶ 21} "Given the brief amount of time it takes for alcohol to clear the system, I have no reason to believe the client is in fact abstinent from alcohol, although I have no hard evidence to the contrary."
 {¶ 22} In a report to CCDCFS, the appellant's substance abuse counselor also stated that the appellant "[r]emains strongly in denial and demonstrates this by minimizing his use of alcohol, minimizing consequences related to his alcohol use, blaming others for his use, rationalizing his use, etc."
 {¶ 23} In an effort to better tailor his treatment to his individual needs, the appellant underwent a psychological evaluation. After the evaluation, the psychologist determined that the appellant was incapable of caring for C.T. without the presence of a responsible adult in the household and remarked that the appellant "[had] absolutely no experience of any significance in terms of caring for a child." In addition to his failure to complete substance abuse treatment and the negative reports from his substance abuse counselor and evaluating psychologist, the appellant also failed to complete the domestic violence and anger management training that was mandated by his overall family case plan. His family case plan also mandated that he obtain employment and stable, independent housing; however, he failed to comply with those requirements as well.
 {¶ 24} Despite being given numerous opportunities to regain custody of his child, the appellant disregarded the recommendations of the trial court and instead exhibited a general indifference to regaining custody of his son and an unwillingness to provide his son with a proper home. It is clear that the appellant is unable to care for C.T.
 {¶ 25} The circumstances surrounding C.T.'s birth and his placement in the custody of CCDCFS demonstrate that an award of permanent custody is in his best interest. C.T. was born to a drug addicted mother and tested positive for opiates at birth. After undergoing detoxification, he was immediately placed with a foster family. C.T.'s guardian ad litem testified that, although at his young age C.T. is unable to communicate his desire to remain with his foster family, he is thriving in the environment. C.T.'s guardian ad litem concluded her report by stating that she absolutely believed that permanent custody was in C.T.'s best interest.
 {¶ 26} C.T. has lived with his foster family since he was three days old. He is extremely well adjusted and has bonded with his foster parents. In addition, C.T.'s foster family has expressed an interest in adopting him.
 {¶ 27} To the contrary, the appellant and C.T.'s other relatives have not expressed a strong interest in offering him a permanent home. In his motion for permanent custody, the appellant did not request permanent custody on his own behalf, but rather requested that C.T. be placed in the permanent custody of his paternal grandmother. Although C.T.'s paternal grandmother answered affirmatively when the trial court asked whether she would like C.T. to live with her, she has not taken any of the necessary steps to file a motion for legal custody. She also expressed that she was unable to even visit C.T. on a regular basis because her employment schedule prevented her from doing so. Because neither C.T.'s father nor his paternal grandmother have filed a motion for permanent custody on their own behalf, this court does not have jurisdiction to place C.T. in the care of either of them.
 {¶ 28} Similarly, C.T.'s maternal grandmother has not taken steps to gain permanent custody. C.T.'s maternal grandmother lives in West Virginia and has legal custody of two of C.T.'s siblings. She has only seen C.T. on one occasion and has not expressed a formal interest in gaining custody. C.T. also has a paternal aunt and uncle who could have attempted to seek custody; however, neither expressed a desire to do so, nor do they have any interaction with him.
 {¶ 29} It is clear that awarding permanent custody to CCDCFS, with the possibility of adoption by his foster family, is in C.T.'s best interest. His parents are unable to care for him, and his relatives have not taken the necessary steps to offer him a permanent home. The foster family that C.T. currently resides with is the only family he has ever known, and C.T. has bonded with them as his primary care givers. In addition to the stable, nurturing environment they have provided for him, C.T.'s foster family has also expressed an interest in adopting him. In light of his familial situation, remaining with his foster family is in C.T.'s best interest.
 {¶ 30} In evaluating all of the evidence presented at trial, it is apparent that the trial court's decision was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Accordingly, the trial court was not in error when it awarded permanent custody to CCDCFS, and we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and McMonagle, J., Concur.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.