[Cite as *In re K.S.*, 2021-Ohio-694.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE K.S., ET AL.

Minor Children

[Appeal by Mother, F.C.]

:
:
:
:
:
:

No. 109928

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 11, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17913951, AD-17913952, and AD-17913953

***Appearances:***

Rachel A. Kopec, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant F.C. ("appellant") brings the instant appeal, challenging the juvenile court's judgment granting permanent custody of her three minor children, K.S., Kieu. N., and Kier. N., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Specifically, appellant contends that the juvenile court's decision to grant permanent custody to CCDCFS was against the manifest

weight of the evidence and that the investigation and report of the guardian ad litem were inadequate. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

{¶ 2} CCDCFS became involved with the children due to issues of domestic violence, education neglect, mental health, and criminal involvement of the children's parents. On September 13, 2017, CCDCFS filed a complaint alleging that appellant's three children were neglected. The complaint requested a disposition of temporary custody of K.S. to CCDCFS and protective supervision for Kieu. N. and Kier. N. On October 13, 2017, CCDCFS filed a notice of amendment and an amended complaint to request temporary custody of all three children, as well as predispositional temporary custody of all three children. Following a hearing, the juvenile court ordered all three children into the predispositional temporary custody of CCDCFS.

{¶ 3} The agency developed a case plan with the goal of reunification of the children with appellant. The plan outlined services for appellant's issues with domestic violence, anger management, mental health, and parenting.

{¶ 4} The juvenile court held an adjudicatory hearing on November 20, 2017, where appellant admitted to the amended complaint, and the children were adjudged to be neglected. A dispositional hearing was held on December 5, 2017, after which, the children were committed to the temporary custody of CCDCFS.

{¶ 5} In August 2018, CCDCFS moved for an extension of temporary custody. Appellant stipulated to the motion, and it was granted by the juvenile court. Then,

on March 6, 2019, CCDCFS filed a motion to modify temporary custody to permanent custody.[1]

{¶ 6} After several continuances, trial was held on the motion for permanent custody on August 11 and 12, 2020. At the hearing, CCDCFS presented as witnesses, Preston Terry and Laura Kominek, both of whom were extended services case workers who had worked on appellant's case. Appellant presented the testimony of Dr. Nichole Livingston, the interim director of the Cuyahoga County Court of Common Pleas Psychiatric Clinic, and Joseph Libretti, an investigator for the Cuyahoga County Public Defender's Office, who had visited and assessed the suitability of appellant's home with regard to the children.

{¶ 7} Testimony was elicited at trial that appellant completed services for anger management and domestic violence in 2017 and an additional domestic violence program in 2018; however, appellant was involved in several domestic violence incidents with family members in the presence of the children after the completion of the services. Appellant also engaged in behavior with her boyfriend that led to criminal charges.

{¶ 8} Appellant had previously been diagnosed with bipolar disorder, had been hospitalized for attempting suicide, and prescribed an antipsychotic medication. Appellant initially minimized her mental health issues, but became more consistent with her treatment as the proceedings continued. However, she

---

[1] While not relevant to this appeal, there were a number of motions filed by various parties relating to legal custody of the children, including by appellant and the children's maternal grandmother.

still exhibited some concerning behaviors, such as several emotional outbursts in court. At one point, the juvenile court judge had to admonish appellant that if she had any further outbursts, he would have deputies remove her from the courtroom.

{¶ 9} Additional evidence was presented that appellant had not had stable housing for a significant period of time. Ms. Kominek testified that the agency wants to see six consecutive months of being able to maintain the home and its expenses. There was testimony that appellant had moved into an appropriate home just prior to the trial; however, this led to further questions as to how appellant would support the children if they lived with her since her rent was $600 per month, and the sole income she received, social security, only came to $700 each month.

{¶ 10} The court granted CCDCFS's motion, terminating all parental rights and placing the children in the permanent custody of CCDCFS. Appellant then filed the instant appeal, raising two assignments of error for our review:

> 1. Permanent Custody of the children was against the manifest weight of the evidence.
>
> 2. The Trial Court erred when it grated [sic] permanent custody when the Guardian ad Litem's Investigation and Report were inadequate and fell below the minimum standards required[.]

## II. Law and Analysis

### A. Manifest Weight of the Evidence

{¶ 11} In her first assignment of error, appellant argues that the juvenile court's judgment in awarding permanent custody of the three minor children to CCDCFS was against the manifest weight of the evidence.

{¶ 12} Appellant asserts that she completed all of her case plan services, to wit: domestic violence counseling, anger management, mental health services, and parenting support, and also obtained stable housing. In addition, with regard to her mental health, appellant points to the testimony of Dr. Livingston, who maintained that any inappropriate behaviors in the courtroom should not be looked at in isolation. Finally, appellant argues that the children have a strong bond with her and at least two of the children specifically stated that they wanted to live with her.

{¶ 13} The agency argues that whether appellant ultimately completed her case plan services is not dispositive of whether the children could be reunified with her. Furthermore, appellant asked the juvenile court to take judicial notice of the dispositional review journal entry, exhibit No. 6, which noted that appellant "had not completed all objectives and does not have stable housing." Lastly, the agency contends that the testimony of Dr. Livingston had no relevance to the instant proceedings. Dr. Livingston herself testified that she had evaluated appellant solely in connection with determining appellant's competency to stand trial and qualification for the mental health docket for appellant's criminal case.

{¶ 14} An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re Jacobs*, 11th Dist. Geauga No. 99-G-2231, 2000 Ohio App. LEXIS 3859, 11 (Aug. 25, 2000), citing *In re Taylor*, 11th Dist. Ashtabula No. 97-A-0046, 1999 Ohio App. LEXIS 2620 (June 11, 1999).

{¶ 15} "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re M.S.* at ¶ 18.

{¶ 16} With regard to a challenge based upon manifest weight of the evidence, the Supreme Court of Ohio has explained:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their [judgment], if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 17} When conducting a manifest weight review, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley* at ¶ 20. "In weighing the

evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶ 18} Therefore,

[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re Satterwhite*, 8th Dist. Cuyahoga No. 77071, 2001-Ohio-4137. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. *Id.*, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

*In re C.T.*, 8th Dist. Cuyahoga No. 87159, 2006-Ohio-1944, ¶ 15.

{¶ 19} CCDCFS may obtain permanent custody by first obtaining temporary custody of a child and then filing a motion for permanent custody under R.C. 2151.413. *See In re M.E.*, 8th Dist. Cuyahoga No. 86274, 2006-Ohio-1837. There is no dispute that the proper procedure occurred here. When CCDCFS files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedures set forth under R.C. 2151.414 apply.

{¶ 20} Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to CCDCFS, the court must find by clear and convincing evidence: (1) that any one of the conditions set forth in

R.C. 2151.414(B)(1)(a) through (e) exists, and (2) that granting permanent custody to CCDCFS is in the best interest of the child.

{¶ 21} First, the court, after a hearing, must determine whether, by clear and convincing evidence, any of the following factors apply:

> (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e). *In re J.G.*, 8th Dist. Cuyahoga No. 100681, 2014-Ohio-2652, ¶ 41.

{¶ 22} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re L.W.,* 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28. In this instance, the court determined that several of the factors, including that the children were in temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period, were satisfied. Appellant does not dispute the presence of any of the factors under R.C. 2151.414(B)(1).

{¶ 23} For these reasons, we find that the first prong of R.C. 2151.414(B) has been satisfied by clear and convincing evidence. We now turn to the juvenile court's conclusion that permanent custody of the agency was in the children's best interests.

{¶ 24} We review a trial court's determination of a child's best interests under R.C. 2151.414(D) for abuse of discretion. *In re D.A.,* 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25} In determining the best interests of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 26} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the

statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. We have previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).

{¶ 27} In this case, the court stated in each of the three journal entries regarding the individual children that it considered the following:

> the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve (12) or more months of a consecutive twenty-two (22) month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody * * * .

{¶ 28} In assessing the best interests of the children, the juvenile court found as follows:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the mother and father to remedy the problems that initially caused the child to be placed outside the home, the mother and father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> Mother has a chronic mental illness and chronic emotional illness that is so severe that it makes the parent unable to provide an adequate, permanent home for the child at the present time and, as anticipated, within one (1) year after the Court holds the hearing in this matter. It should be noted that during the trial mother exited the courtroom on several occasions and became disruptive necessitating the Court to summon the Sheriff Deputies.

Mother has neglected the child between the date of the original complaint was filed and the date of the filing of this Motion by the failure to regularly visit, communicate, or support the child.

Father, prior to incarceration, has neglected the child between the date of the original complaint was filed and the date of the filing of this Motion by the failure to regularly visit, communicate, or support the child.

Mother has demonstrated a lack of commitment toward the child by her unwillingness and inability to provide an adequate, permanent home for the child.

Father, prior to incarceration, has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other their other actions, have shown an unwillingness to provide an adequate, permanent home for the child.

Father is incarcerated at the time of the filing of the motion and will not be available to care for the child for at least eighteen months after the filing [of the] Motion for Permanent Custody.

Mother is unwilling to provide food, clothing, shelter, or to prevent the child from suffering emotional mental neglect as evidenced by their unwillingness to successfully complete a case plan so they can provide care for the child.

Father, prior to incarceration, [was] unwilling to provide food, clothing, shelter, and other necessities for the child or to prevent the child from suffering neglect as evidenced by [his] unwillingness to successfully complete a case plan so [he] can provide care for the child.

{¶ 29} The court noted that appellant had failed to benefit from domestic violence services, failed to engage in recommended counseling and medication to address her bipolar disorder and aggressive behavior, and failed to visit the children on a regular basis. The court's conclusions that the children could not be placed with one of their parents within a reasonable time or should not be placed with either parent are supported by clear and convincing evidence.

{¶ 30} According to the testimony elicited at trial, appellant has not met her requirements under the case plan and has not proven that she can provide a permanently stable environment for her children. Based on this record, we do not find that the juvenile court abused its discretion in determining that permanent custody was in the children's best interests.

## B. Guardian Ad Litem's Investigation/Report

{¶ 31} In appellant's second assignment of error, appellant argues that the juvenile court erred by granting permanent custody of the three minor children to CCDCFS when the guardian ad litem's ("GAL") investigation and report were inadequate and fell below the minimum standards required.

{¶ 32} Appellant asserts that the GAL was required to do a home inspection, interview parties and other people, view an interactional visit between the parents and children, ascertain the wishes of the children, and submit a written report seven days prior to trial. Appellant argues that the GAL did not fulfill her obligations in that she did not ascertain the wishes of the minor children. Further, the GAL should have requested the juvenile court appoint separate counsel for the minor children. Moreover, appellant maintains that the GAL had not seen appellant's new home or visited with appellant and the children together in approximately one year.

{¶ 33} As an initial matter, appellant did not object to the GAL's written reports or the GAL's oral recommendation during the permanent custody hearing, nor was there any motion for appointment of separate counsel for the children. Accordingly, appellant forfeited any issues pertaining to the GAL's investigation or

reports, absent plain error.  *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 152; *see In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 7 (father never objected to the submission of the GAL's report or to the trial court's reliance on the report), citing *In re S.B.*, 8th Dist. Cuyahoga No. 85560, 2005-Ohio-3163, ¶ 18 (because mother failed to object to the trial court's use of or reliance on the GAL's report, she waived all but plain error on appeal).

{¶ 34} Plain error exists when the error is plain or obvious and when the error affects a party's substantial rights.  Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  "Plain error does not exist unless, but for the error, the outcome at trial would have been different."  *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).  "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings."  *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982).

{¶ 35} The state contends that appellant's argument regarding the lack of home visits is disingenuous because appellant failed to provide a viable residence for an extensive period of time and only secured her current residence just prior to trial.  Further, the state argues that simply because the children had a strong bond with appellant does not mean there was a conflict between the children's wishes and the GAL's recommendation.

**{¶ 36}** As this court has noted,

> [t]he role of a guardian ad litem in a permanent custody proceeding is to protect the child's interest, to ensure that the child's interests are represented throughout the proceedings and to assist the trial court in its determination of what is in the child's best interest. *See, e.g., In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 14, citing R.C. 2151.281(B) and Sup.R. 48(B)(1). This is accomplished by the guardian ad litem conducting an investigation of the child's situation and then making recommendations to the court as to what the guardian ad litem believes would be in the child's best interest. *In re J.C.*, 4th Dist. Adams No. 07CA833, 2007-Ohio-3781, ¶ 13.

*In re K.Z.*, 8th Dist. Cuyahoga No. 107269, 2019-Ohio-707, ¶ 67.

**{¶ 37}** In support of her argument that the GAL's investigation and report were inadequate and insufficient, appellant cites Sup.R. 48. Ohio appellate courts, including the Eighth District, have recognized,

> "'Sup.R. 48 provides * * * good guidelines for the conduct of a guardian ad litem in meeting his or her responsibilities in representing the best interest of a child in order to provide the court with relevant information and an informed recommendation.'" *In re C.O.*, 8th Dist. Cuyahoga Nos. 99334 and 99335, 2013-Ohio-5239, ¶ 14, quoting *In re K.G.*, 9th Dist. Wayne No. 10CA16, 2010-Ohio-4399, ¶ 12. However, the Rules of Superintendence are only "'general guidelines for the conduct of the courts'" and "'do not create substantive rights in individuals or procedural law.'" *In re C.O.* at ¶ 14, quoting *In re K.G.* at ¶ 11. As such, it has been generally held that a guardian ad litem's failure to comply with Sup.R. 48 is not, in and of itself, grounds for reversal of a custody determination. *See, e.g., In re C.O.* at ¶ 14; *In re N.B.*, 8th Dist. Cuyahoga No. 105028, 2017-Ohio-1376, ¶ 26; *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, ¶ 14-18.

*In re K.Z.* at ¶ 72.

**{¶ 38}** In the instant matter, the children's GAL filed a written report and recommendation with the court, advocating that permanent custody of all three children be granted to CCDCFS.

**{¶ 39}** During the hearing on the agency's permanent custody motion, the GAL confirmed that she was recommending permanent custody to CCDCFS, stating as follows regarding appellant and the children's fathers:

> With regard to mother herself, why my advocacy is not that the children be reunified with their mother, these children have been out of her care and control for close to three years, and this case was set for trial back in February.
>
> Mother lost the benefit of all of these many months well past two years of her children being committed.
>
> I don't see any change with regard to this young woman as far as her ability to care for her children, provide for her children, protect her children, enhance their lives.
>
> Does she care for them? Yes, I believe she cares for them very much. Are they happy to see her? All reports is [sic] that they're happy to see her.
>
> When I saw her in the home of [Grandmother] with her children for visitation, they were happy to see her.
>
> But as you heard through evidence and testimony, she's never had more than two-hour increments of time. That's not parenting. That's visiting.
>
> She's never had a home for more than a few months that she's able to maintain. No one's clear with regard to her source of income.
>
> Three years have gone by. She's a very young woman. No attention to job training, finding and keeping a job, educating herself, and she's the mother of four.
>
> It was also clear by her conduct and behavior that nothing has changed and whether she has bipolar or she has anxiety or she doesn't have anything at all and this is her conduct and behavior, it's not appropriate.

It's not appropriate for a woman to parent three children like that because her antics in the past two days are reflective of her antics all of the time.

She has walked out of court hearings with your Magistrate previously. She hears something she doesn't like, she gets up and she leaves. Her relationship with her own family members is concerning.

There's been history with her own mother, with [Grandmother]. I like you, I don't like you. It's volatile.

We heard that just recently she was dealing during the pendency of this case with another criminal case, a Felonious Assault case.

Your honor, my advocacy is that this young woman cannot parent and no real change has taken place in three years.

* * *

With regard to the father, the father, [Father 1] of the youngest two children, who's been incarcerated throughout the pendency of this case, he's going to continue to be incarcerated.

There's nothing that he's able to do for these children other than phone calls.

With regard to [Father 2], he's been incarcerated through the pendency of this case. He does have a telephonic relationship with his son.

(Tr. 306-309.) The GAL concluded by reiterating her recommendation that permanent custody was in the best interests of the children.

{¶ 40} After reviewing the record, we cannot find that the GAL failed to ascertain the wishes of the children or that separate counsel should have been appointed for the children. A juvenile court should appoint independent counsel for a child "'when the child has consistently and repeatedly expressed a strong desire that differs and is otherwise inconsistent with the guardian ad litem's

recommendations.'" *In re V.L.*, 12th Dist. Butler No. CA2016-03-045, 2016-Ohio-4898, ¶ 39, quoting *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 19; *In re B.J.L.*, 2019-Ohio-555, 130 N.E.3d 906, ¶ 48 (4th Dist.); *see also In re J.M.*, 8th Dist. Cuyahoga No. 104028, 2016-Ohio-7306, ¶ 27, quoting *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965, ¶ 36 (footnotes omitted) ("Ohio courts have concluded that 'the appointment of independent counsel is warranted when a child has "repeatedly expressed a desire" to remain or be reunited with a parent but the child's [GAL] believes it is in the child's best interest that permanent custody of the child be granted to the state.'"). However, a juvenile court need not "'consider the appointment of counsel based upon a child's occasional expression of a wish to be with a parent.'" *In re N.P.*, 2016-Ohio-3125, 65 N.E.3d 319, ¶ 14 (11th Dist.), quoting *In re Williams*, 11th Dist. Geauga Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, ¶ 24; *In re E.S.*, 2d Dist. Clark No. 2016-CA-36, 2017-Ohio-219, ¶ 49-51.

{¶ 41} The record demonstrates that, at the time of trial, the children were nine, five, and four years old. There was certainly testimony, including by the GAL, that the children loved their mother. There was also testimony that the children were bonded with their caregivers and loved them as well. However, there was no evidence that the children had "consistently and repeatedly expressed a strong desire" to reside with their mother. Accordingly, the juvenile court did not err in failing to appoint independent counsel for the children.

**{¶ 42}** In addition, we cannot fault the GAL for failing to conduct a home visit. There was testimony that appellant failed to provide a viable residence address for a significant period of time. Moreover, appellant only moved into her current residence a week or so prior to trial. Even if the GAL did not have the opportunity to visit, the agency did confirm that the house in which appellant was residing was appropriate.

**{¶ 43}** While the GAL's report was filed when the original trial was scheduled six months prior, there is no evidence that appellant's housing or personal circumstances had changed during that time. We are unable to conclude that the juvenile court committed plain error considering and/or relying upon the GAL's report and recommendation. Appellant's second assignment of error is overruled.

### III. Conclusion

**{¶ 44}** After thoroughly reviewing the record, we affirm the juvenile court's judgment granting permanent custody of the minor children, K.S., Kieu. N., and Kier. N., to CCDCFS. The juvenile court's judgment was not against the manifest weight of the evidence, and the court did not err in considering or relying upon the GAL's report and recommendation.

**{¶ 45}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR