[Cite as *In re M.A.*, 2025-Ohio-4473.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE M.A. : 

: No. 114981

A Minor Child :

:

[Appeal by Mother] :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD24912163

---

*Appearances:*

Dunham Law, L.L.C., and Michael P. Dunham, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Appellant ("Mother") appeals the decision of the Cuyahoga County Common Pleas Court, Juvenile Division ("juvenile court"), granting the Cuyahoga County Division of Children and Family Services' ("CCDCFS" or the "agency")

request for permanent custody. For the reasons that follow, we affirm the decision of the juvenile court.

{¶ 2} CCDCFS filed a complaint on November 15, 2024, alleging that M.A. (d.o.b. November 13, 2024) was a dependent child. The complaint alleged that Mother's nine other children were not in her custody: six were placed in the permanent custody of the agency, one was placed in the legal custody of an interested party, and two were in the emergency temporary custody of the agency.[1] Further, the complaint alleged that "Mother has not resolved the issues, which caused her other children to be removed from her care." CCDCFS also filed a motion for predispositional temporary custody.

{¶ 3} A hearing on the motion was held the same day. After testimony from the assigned agency social worker, Audrey Lee ("Lee"), and Mother, the trial court granted the agency's motion for predispositional temporary custody. During the hearing, Lee revealed that Mother threatened her and that she pressed charges against Mother in March 2024.

{¶ 4} The juvenile court held a pretrial on the case in early December 2024. At that time, Mother's attorney reported that Mother had not visited with M.A., either via Zoom or in person. As a result, Mother was requesting at least two-hour weekly in-person visits with the child. CCDCFS objected, claiming that two of Mother's other children had recently disclosed circumstances that led them to be

---

[1] These two children were removed from Mother's care and placed in the legal custody of their father. At the time the complaint was filed, those children had been removed from the father's care.

concerned about in-person visitations. Additionally, CCDCFS reported that Mother had made threats against Lee.[2] Nevertheless, the juvenile court ordered two-hour weekly supervised visits at the agency.

{¶ 5} At a subsequent hearing approximately eight days later, the juvenile court convened to address the disposition for two of M.A.'s siblings and Mother's motion to remove Lee from the case. At that time, counsel for Mother reported that Mother still had not received visits with M.A. During the hearing, Lee informed the court that she had been removed from the case and that another social worker would be handling the matter going forward. Furthermore, when Lee was asked what the reunification plan was for M.A.'s siblings, Lee testified that the plan was for reunification with their father, who was the custodial parent at the time of removal. Lee also testified that the agency was not considering reunification with Mother at that time for those two children because the agency usually seeks reunification with the person who held custody at the time of removal. When questioned further, Lee acknowledged that Mother was assigned case plan goals towards reunification with her children; however, she admitted that reunification with Mother was not a goal in the agency's files.

{¶ 6} The adjudication hearing for M.A. was held in February 2025. At that time, the parties stipulated to an amended complaint. The complaint was amended to add the word "fully," so that it stated, "Mother has not fully resolved the issues,

---

[2] During the hearing, CCDCFS did not clarify when these threats occurred. During subsequent hearings, it was disclosed Mother was indicted for aggravated menacing for events that occurred in November 2024.

which caused her other children to be removed from the home." Mother admitted to the allegations in the amended complaint. The juvenile court addressed Mother directly to ensure she understood the amendment and the consequences of her admission. The court then adjudicated M.A. as a dependent child.

{¶ 7} The dispositional hearing was held in March 2025. Valerie Goodrum ("Goodrum"), the agency's extended services worker, was the sole witness. The parties stipulated to and CCDCFS introduced the journal entries regarding Mother's other children as CCDCFS's exhibit Nos. 1 through 9. This established, in part, that six of Mother's children had been placed into the permanent custody of the agency based on Mother's chronic mental-health and substance-abuse issues. Goodrum testified that she was assigned M.A.'s case in January 2025. She reported that Mother's case plan included addressing mental health and substance abuse issues. Goodrum reported that Mother was not receiving treatment for either issue. Mother was receiving services at Brighter Tomorrow for approximately two years, but when Goodrum was assigned the case, she recognized that the person who Mother identified as her service provider was not a therapist but a case manager. Goodrum's supervisor reached out to Brighter Tomorrow to confirm, and they learned that Mother had not received any mental-health or substance-abuse treatment, only case management. Goodrum represented that Mother had not provided any evidence that she was receiving mental-health or substance-abuse treatment with any other provider.

{¶ 8} Goodrum testified that Mother obtained housing and the agency had received a copy of her lease. However, the social worker had not visited the home and therefore, could not vouch for its appropriateness. Goodrum testified on direct-examination that when she asked Mother if she could visit, Mother declined. On cross-examination, Goodrum acknowledged that she asked for permission to visit Mother's home once during one of Mother's visits with M.A. and that the request was for that day. Goodrum was not asked whether she followed up with that request or whether she attempted any unannounced visits to Mother's home.

{¶ 9} Goodrum also testified that Mother completed both anger-management and parenting classes. However, although Goodrum saw Mother benefit from the anger-management classes, Mother still would "get triggered." Goodrum explained that sometimes when triggered Mother would become agitated, sometimes she would verbalize the problem, and sometimes Mother would cry. Per Goodrum, triggering events included visits at the agency due to Mother's own history in foster care and seeing Lee while at the agency. Goodrum felt some of Mother's responses were inappropriate when they occurred in front of M.A.

{¶ 10} Goodrum also had the opportunity to view Mother's visits with M.A. She reported that Mother showed appropriateness and there were no major concerns. Goodrum testified on cross-examination to case notes from another social worker who supervised visits. That social worker expressed that Mother spent the entire two-hour visits with M.A., engaging appropriately and changing, feeding, and interacting with him. The social worker also reported that Mother was visibly

displaying a deep emotional attachment to M.A. Goodrum agreed that Mother and M.A. were well bonded. Additionally, Mother reported concerns she had that M.A. was showing signs of a seizure disorder, a condition Mother also had. The agency had M.A. examined by a neurologist as a result of Mother's concerns, and no issues were discovered at that time.

{¶ 11} Finally, Goodrum testified that Mother reported that she was employed, but Mother had not provided any pay stubs or other evidence of employment.

{¶ 12} At the conclusion of testimony, the juvenile court heard from the guardian ad litem ("GAL"). In the GAL's written report, which was filed prior to trial, she recommended that the court commit M.A. to the permanent custody of the agency. She noted that Mother's other children were in the permanent custody of the agency or the legal custody of interested parties. Further, she noted that Mother's case plan had the same goals established for her other children. While Mother obtained housing, the GAL noted that she had not successfully completed drug treatment and tested positive for cocaine in January. Even though most of Mother's drug screens were negative, she had not achieved six months of uninterrupted sobriety. The GAL noted in her report that Mother self-reported that she addressed her mental-health issues, but did not provide any documentary support. Mother had not identified an alleged father and no other relatives stepped forward. Furthermore, M.A. was doing well in foster care and was up to date medically.

{¶ 13} At trial the GAL maintained her recommendation for permanent custody. She reported that she was assigned as GAL for all of Mother's other children and was familiar with the case. Although Mother had accomplished some goals on her case plan, her substance-abuse status was still unclear. Specifically, it was unclear when Mother last used drugs. The GAL opined that permanent custody was in the best interest of the child.

{¶ 14} The juvenile court took the case under advisement and ultimately granted the agency's request for permanent custody. Mother appeals, assigning the following assignment of error for our review.

### Assignment of Error

> The judgment of the trial court terminating Mother . . . of her parental rights as to M.A., and, awarding permanent custody to [CCDCFS] was made with insufficient evidence and against the manifest weight of the evidence.

### Law and Analysis

### Constitutional Challenge

{¶ 15} To begin with we address Mother's constitutional challenge. For the first time on appeal, Mother challenges the constitutionality of the requirement that a parent who has had their parental rights terminated for a child's sibling must establish by clear and convincing evidence that the parent has remedied the situation that led to her parental rights being terminated. Mother suggests that this court should not shift the burden of proof to Mother when examining her weight and sufficiency arguments. Although Mother does not cite a specific statute, we

presume she is referring to the requirement of R.C. 2151.414(E)(11), which provides that a juvenile court must find that a child could not or should not be placed with a parent if

> [t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 16} It is well understood that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore, entitled to the benefit of every presumption in favor of its constitutionality." *In re A.W.*, 2015-Ohio-407, ¶ 48 (6th Dist.), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147 (1955). These statutes are deemed "constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." *Id.*, quoting *id.*

{¶ 17} Furthermore, appellate courts will typically not address a constitutional challenge raised for the first time on appeal. (Citations omitted.) *In re D.K.*, 2020-Ohio-5251, ¶ 47 (10th Dist.) Because Mother failed to raise the constitutionality of the statute before the trial court, she waived the issue on appeal and we decline to address it here. Accordingly, we turn to the review of the permanent custody decision.

**Permanent Custody**

{¶ 18} "It is well established that a parent has a fundamental right to raise and care for his or her child." (Citations omitted.) *In re L.M.*, 2018-Ohio-963, ¶ 16 (8th Dist.), quoting *In re V.C.* 2015-Ohio-4991, ¶ 35 (8th Dist.) "The right to parent one's children and maintain and pursue intimate familial associations are fundamental rights guaranteed by the Due Process Clause of the United States Constitution." *In re J.W.*, 2007-Ohio-2007, ¶ 13 (10th Dist.). The termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *E.g., In re V.C.* at ¶ 35.

{¶ 19} "[T]he United States Supreme Court holds that before any court may completely and irrevocably sever a parent's rights in their natural child, 'due process requires that the State support its allegations by at least clear and convincing evidence.'" *In re J.W.* at ¶ 14, quoting *Santosky v. Kramer*, 455 U.S. 745, 747-748 (1982).

{¶ 20} A juvenile court may grant permanent custody to a children services agency if the court determines, "'by clear and convincing evidence, that [the placement] is in the best interest of the child' and that one of the five factors listed in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting R.C. 2151.414(B)(1). "Clear and convincing evidence is that measure or degree of proof, which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954); *e.g., In re K.S.*, 2021-Ohio-694, ¶ 15 (8th Dist.). It is "more than

a mere preponderance" but not the level of certainty to establish proof beyond a reasonable doubt in criminal cases.  *Id.*

**Standard of Review**

{¶ 21} "[W]hen reviewing a court's award of permanent custody and termination of parental rights, 'the proper appellate standards of review to apply. . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties' rather than the abuse-of-discretion standard."  *In re T.C.*, 2024-Ohio-6131, ¶ 32 (8th Dist.), quoting *In re Z.C.* at ¶ 18.

{¶ 22}  Under the sufficiency standard, "[w]here the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *In re Z.C.* at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).  This court "'should affirm a trial court when "'the evidence is legally sufficient to support the jury verdict as a matter of law.'"'"  *Id.* at ¶ 13, quoting *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 3, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed. 1990).

{¶ 23} The weight of the evidence, in contrast, addresses the evidence's ability to "'"induce belief."'"  *Id.* quoting *Thompkins* at 386, quoting *Black's* at 1594.  A reviewing court

> must weigh the evidence and all reasonable inferences, consider the
> credibility of the witnesses, and determine whether, in resolving
> conflicts in the evidence, the finder of fact clearly lost its way and

created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

## R.C. 2151.353(A)(4) Requirements

{¶ 24} In the instant case, the agency requested permanent custody of M.A. pursuant to R.C. 2151.353(A)(4). When the agency files a complaint with an original dispositional request for permanent custody, there are two requirements the trial court must satisfy before it may order the child placed into permanent custody. *In re A.R.*, 2020-Ohio-5005, ¶ 31 (8th Dist.). First, the court must find that the child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," as provided in R.C. 2151.414(E). Second, the court must determine that "permanent commitment is in the best interest of the child," as provided in R.C. 2151.414(D)(1). *Id.* Furthermore,

> the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home, . . . [if] [t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

R.C. 2151.419(A)(2) and 2151.419(A)(2)(e).

**First Prong:  R.C. 2151.414(E)**

{¶ 25} Whether a child could not or should not be returned to the custody of a parent is determined by the factors described by statute.  Here, the trial court made findings pursuant to R.C. 2151.414(E)(1), (2), (11) and (14), which provide: [3]

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

---

[3] The trial court included language from R.C. 2151.414(E)(4) as well but did not include that section in its initial findings of fact.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶ 26} A court need only find one of these factors to be present to make a finding that the child could not or should not be placed with the parent. *In re J.D.*, 2025-Ohio-1839, ¶ 26 (8th Dist.). Mother challenges the juvenile court's findings under R.C. 2151.414(E)(1) and (2) but does not challenge the trial court's findings under R.C. 2151.414(E)(11) and (14). Even though Mother is not challenging these findings, we elect to consider them anyway, focusing on R.C. 2151.414(E)(11), because the juvenile court only needed to make a finding under one of the sections to satisfy the requirements of R.C. 2151.353(A)(4).

{¶ 27} It is undisputed that six of M.A.'s siblings were removed from Mother's care and placed into permanent custody of the agency. Mother, therefore, had the burden of establishing by clear and convincing evidence that she could "provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11). One court has described the evidence as giving the parent the ability to ""rebut the presumption that, because her parental rights were involuntarily terminated as to her other children, she is not

a suitable parent for additional children.'"" *In re M.J.*, 2024-Ohio-1261, ¶ 16 (9th Dist.), quoting *In re A.H.*, 2024-Ohio-502, ¶ 17 (9th Dist.), quoting *In re E.A.*, 2012-Ohio-5925, ¶ 14 (9th Dist.).

{¶ 28} CCDCFS introduced the journal entries for Mother's other children, which found, in part, that Mother's chronic mental illness and chronic substance abuse were so severe that she was unable to provide an adequate permanent home for the children, at that time, and as anticipated, within one year of the court's hearing on the matter. The journal entries further established that Mother was unwilling to prevent the children from suffering emotional and mental neglect, as evidenced by her unwillingness to successfully complete the case-plan objectives. In the instant case, the record reflects that at the time of trial, Mother had not completed a substance-abuse or mental-health treatment plan. She was in a case-management plan with Brighter Tomorrow, which did not include those services. Mother did not present any evidence of mental-health treatment or completion of a substance-abuse program. Furthermore, Mother did not present any evidence to establish by clear and convincing evidence that she was able to provide a legally secure placement and provide for the health, welfare, and safety of M.A.

{¶ 29} Additionally, the only evidence presented regarding Mother's employment and housing was Mother's report to the social worker that she had obtained both and a copy of a lease. There was no testimony regarding the conditions of the home or whether Mother had obtained a crib and other necessities for a baby. In the absence of any evidence that Mother had completed case-plan

objectives, and Mother's decision not to present evidence, Mother failed to meet her burden of establishing by clear and convincing evidence that she could appropriately provide for M.A. We find that there was adequate evidence in the record to support the juvenile court's finding under R.C. 2151.414(E)(11) and the finding was not against the manifest weight of the evidence. Accordingly, the juvenile court properly found that M.A. could not nor should not be placed with Mother within a reasonable time.

**Second Prong:   R.C. 2151.414(D)**

{¶ 30} Under the second prong, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. A court must consider all the following factors, but is not limited to these factors, when determining the best interest of the child:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2141.414(D)(1)(a) through (e).

{¶ 31} Based on our review of the record, the agency set forth sufficient evidence to establish that permanent custody to the agency was in M.A.'s best interests. Testimony established that M.A. was in foster care since he was two days old, well bonded with his foster family, and thriving. Although M.A. was not old enough to express his wishes, the GAL recommended it was in his best interest to be committed to the agency's permanent custody. The GAL was assigned the cases of Mother's other children and was well versed in the family's history. Although she recognized that Mother loves all her children, the GAL opined that Mother was not a suitable placement for M.A. In her written report, the GAL noted that Mother had not successfully completed drug treatment and had tested positive for cocaine in January. The GAL acknowledged that most of Mother's drug screens were negative, but Mother had not obtained six months of uninterrupted sobriety. Additionally, although Mother reported she had addressed her mental health, the GAL had not seen any documentation verifying completion.

{¶ 32} Furthermore, Goodrum testified that no one had been identified as a potential legal custodian for M.A. Mother refused to tell Goodrum the name of M.A.'s father and did not identify any other suitable candidates. Moreover, no relatives or interested parties came forward or filed a motion for legal custody prior

to the permanent custody hearing.  Finally, the juvenile court made a finding under R.C. 2151.414(E)(11) that M.A. could not or should not be placed with the parent within a reasonable period of time.  Based on the foregoing, there was sufficient evidence in the record to support the juvenile court's best-interest determination. Furthermore, that decision was not against the manifest weight of the evidence.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR