[Cite as *In re T.S.*, 2021-Ohio-2034.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE T.S.

A Minor Child

[Appeal by M.S., Father]

:
:
:
:
:
:

No. 110015

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 17, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-17907163

***Appearances:***

Kelly M. Zacharias, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* Cuyahoga County Division of
Children and Family Services.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-Father, M.S. ("Father"), appeals from the judgment of the

juvenile court awarding permanent custody of his daughter, T.S. (d.o.b.

February 12, 2011), to the Cuyahoga County Division of Children and Family

Services ("CCDCFS" or "the agency").  For the reasons set forth below, we affirm the decision awarding permanent custody to the agency.[1]

## Procedural History

{¶ 2} On November 15, 2016, CCDCFS filed a complaint and a motion for predispositional temporary custody alleging that T.S.'s brother Te.S. (d.o.b. March 11, 2014) was abused and neglected and that T.S., her sister T.W. (d.o.b. November 10, 2006), and brother Ty.S. (d.o.b. September 21, 2007) were neglected and dependent.  The complaint alleged that on November 7, 2016, Te.S. suffered second-degree burns from scalding water on his legs and chest.  The complaint also alleged that Mother's explanation of the incident was inconsistent with the nature and severity of Te.S.'s injuries.  It alleged that Mother failed to provide immediate medical care because mother waited until the next day to take Te.S. to the hospital.  The complaint also alleged that Mother did not have stable housing.  As to Father, the complaint alleged that he had established paternity for T.S. and was the alleged father of Te.S. but had not established paternity.  The complaint alleged that Father had failed to support, visit, or communicate with either child consistently.

{¶ 3} The children were placed in predispositional temporary custody of the agency on December 1, 2016.  The original complaint was not able to be resolved within the statutory 90-day time frame under R.C. 2151.28(B)(3).  CCDCFS dismissed that complaint and refiled it on February 10, 2017.  The predispositional

---

[1] Mother has also appealed this decision.  She is not a party to this appeal, however, and will therefore only be minimally discussed.

placements with the agency for the children continued effective February 15, 2017. The second complaint could not be resolved within the 90-day timeframe and was also dismissed.

{¶ 4} On May 5, 2017, CCDCFS refiled the complaint, which is the underlying case in this appeal. In addition to the aforementioned allegations, the complaint noted that Mother had pled guilty to a felony charge of attempted child endangering. This plea took place on April 5, 2017. On May 8, 2017, the court granted the agency's motion for predispositional temporary custody finding that it was in the best interest of the children to be placed in the custody of the agency.

{¶ 5} A combined adjudicatory and dispositional hearing was held on July 31, 2017. The assigned social worker, Ashley Brown, testified that she had been informed that the Father had been recently released from prison and was residing in a homeless shelter at 2100 Lakeside Avenue, Cleveland, Ohio. She made attempts to locate him there but was not successful. Father did not attend the hearing.

{¶ 6} T.S., Ty.S., and T.W. were adjudicated neglected and dependent and placed in the temporary custody of the agency. Te.S. was adjudicated abused and neglected and placed in the temporary custody of the agency.

{¶ 7} Mother was able to make progress on the case plan. On November 27, 2017, the juvenile court returned legal custody to Mother with an order of protective supervision.

{¶ 8} After the children returned home, the family experienced some homelessness. T.S. displayed some behavioral and mental health issues at school. Father was not active in the case at this time.

{¶ 9} On May 21, 2018, the agency filed a motion to withdraw its motion to terminate protective services and filed a motion to extend protective services.

{¶ 10} On August 20, 2018, the agency filed a motion to modify protective supervision back to temporary custody and a motion for predispositional temporary custody. Mother had ceased following case plan objectives. Father was still not involved in the case. The children were placed in predispositional temporary custody on August 28, 2018. Helen Rhynard, Guardian ad Litem ("GAL" or "Rhynard") filed a report supporting temporary custody to the agency. The children were placed with, D.E., a maternal aunt initially. On November 21, 2018, two years after the initial incident, Father entered the case by filing a motion for legal custody of T.S. The agency determined that Father did not have a residence and was residing in a homeless shelter. He did provide the paternal grandmother's information to the agency, but she was unable to be a placement for T.S.

{¶ 11} On January 28, 2019, the court held a disposition review hearing. Father's attorney was present for that hearing but represented that she had not had contact with Father since she filed the motion for legal custody in November. She also indicated that he had not contacted her since that time, and the contact information she had for him was no longer good. As a result of those factors, the motion was withdrawn.

{¶ 12} The court proceeded with the agency's motion for temporary custody. The social worker indicated that the children had to be removed from maternal aunt D.E.'s custody due to substance abuse issues and lack of supervision. The juvenile court granted the agency's motion for temporary custody.

{¶ 13} As of May 2019, Father had become active in the case. Mother had agreed to share her visitation time with him. He was given a case plan objective of being able to provide for T.S.'s basic needs. Substance abuse was identified as an issue for him and addressing it was part of his case plan.

{¶ 14} On June 21, 2019, the agency filed a motion to modify temporary custody of the children to permanent custody. In the supporting brief, CCDCFS stated that a case plan had been approved by the juvenile court, that noted that Father had recently expressed interest and engaged in services; however, he did not have safe and stable housing for his child and continued to reside in a homeless shelter. The majority of the motion addressed Mother's issues.

{¶ 15} On June 17, 2020, Father filed a motion for legal custody of T.S. After a dispositional hearing on September 3, 2020, the juvenile court terminated Mother's and Father's parental rights and committed the children to the permanent custody of CCDCFS.

### Dispositional Hearing

{¶ 16} At the dispositional hearing, CCDCFS presented the testimony of social worker, Christopher Walters ("Walters"), who was assigned to the case in January 2019. CCDCFS also presented the testimony of Willisa Sharp ("Sharp") and

Angela Quinn ("Quinn") who respectively, actively supervised the visits, and supervised the space where visits were held.

{¶ 17} Sharp's responsibility was to supervise Mother's visits, so she did not particularly pay attention to Father's visits. She believed he attended all but one visit and Father and daughter seemed bonded and happy. Quinn testified that she did not actively supervise visits, but there were a few situations that stood out, one being a conflict between Mother and Father that ended up requiring staff to separate them. Quinn disagreed with Sharp's testimony, indicating that Father did not attend all of the visits, that they saw Mother more often than Father. Quinn indicated that the only real issue they had with Father was that he came to the visits under the influence and had to be reminded more than once not to do so.

{¶ 18} Walters testified he became the caseworker in January 2019. At that time, Father's case plan objectives were to be able to meet the basic needs of his child and address substance abuse issues through treatment.

{¶ 19} When Walters was first assigned to the case, Mother was adamant that she did not want to engage in services. Father indicated that he engaged in services at Recovery Resources and provided Walters with an assessment from December 2019, but never followed up with a certificate of completion. As Father subsequently came to the visits under the influence, Walters believed Father was not seriously trying to address his substance abuse issues. Father also failed to provide proof of employment. While Father texted the Walters, what appeared to be pay stubs, they were not sufficient for him to verify Father's employment.

{¶ 20} Walters testified that CCDCFS attempted to identify appropriate relatives, who might provide care for the children. Several relative placements had been attempted earlier in the case and failed. Consideration was given to the paternal grandmother; however, it was ultimately determined she could not take custody.

{¶ 21} The GAL was sworn in to give an oral report. Rhynard testified that she had been assigned to the case since then. She had not had much contact with Father. During the pendency of the case Father has consistently lived in a homeless shelter, continues to have substance abuse issues, and has not engaged in services that she is aware of. She testified that Father does visit, but she does not believe he is in a position to take custody of his daughter.

{¶ 22} Rhynard noted that the children have developed significant behavioral and mental health issues over the course of this case. Rhynard testified that she does not believe either parent can address the needs of the children within a reasonable time as neither parent has addressed their own issues. In her written report, Rhynard indicated no appropriate relatives were available.

{¶ 23} Following the hearing, the juvenile court granted CCDCFS's motion for permanent custody of the children.

{¶ 24} Father now appeals, assigning the following errors for our review:

**Assignment of Error No. 1[2]**

---

[2] Although Father's assignment of error references "children," his appeal solely addresses his daughter, T.S., and not the other children.

Permanent Custody of the children was against the manifest weight of the evidence.

## Assignment of Error No. 2
The Court erred in granting permanent custody because the matter should have been continued due to the COVID 19 pandemic.

**{¶ 25}** In his first assignment of error, Father argues that the decision to grant permanent custody was against the manifest weight of the evidence. Specifically, he argues that 1) he met his case plan objectives, 2) the agency failed to assist him in achieving or failed to verify his completion of case plan objectives, and that 3) the juvenile court erred in finding it was in the best interest of the child to grant permanent custody.

**{¶ 26}** It is well established that a parent has a fundamental right to raise and care for his or her child. *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re. C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. Termination of parental rights has been recognized as "the family law equivalent of the death penalty in criminal cases." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, citing *In re J.B.,* 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman,* 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

**{¶ 27}** An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.,* 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is that measure or degree of proof that is more

than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.S.* at ¶ 15, citing *In re M.S.* at ¶ 18.

{¶ 28} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

### First Prong: R.C. 2151.414(B)(1)(a)-(e)

{¶ 29} Under the first prong, the juvenile court must consider whether clear and convincing evidence established at least one of the following five factors:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 30} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 31} In this instance, the juvenile court determined that subsection (a) was satisfied and specifically that the child had not been in the temporary custody of CCDCFS for twelve or more months of a consecutive twenty-two-month period (at the time of the filing for permanent custody), and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 32} With respect to Father, the court found that:

(1) Father has a chemical dependency that is so severe that it makes him unable to provide an adequate permanent home for the child at the

present time, and, as anticipated, within one year after the hearing of the matter.

(2) Father had neglected the child between the date of the original complaint was filed and the date of the filing of the motion by the failure to regularly visit, communicate, and support the child.

(3) Father demonstrated a lack of commitment towards the child by failing to regularly support, visit, communicate with the child when able to do so.

(4) Father is unwilling to provide food, clothing, shelter, and other necessities for the child or to prevent the child from suffering emotional mental neglect, as evidenced by his unwillingness to successfully complete a case plan so he can provide care for the child.

{¶ 33} Father argues that his case plan objectives were to make himself known to the agency and to address his substance abuse issues. However, in addition to that, the case plan called for him to show an ability to meet his child's basic needs. Clearly, Father made himself known to the agency, albeit two years after the agency first got involved with his child.

{¶ 34} Father self-reported that substance abuse was an issue for him. The only testimony on the record as to his recovery, was that he provided Walters with a copy of a substance abuse assessment from Recovery Resources. The assessment was dated in December 2019 but was not produced to Walters until February 2020. Father never provided any additional information. Walters acknowledged that he did not request nor did he receive a release of information from Father in order to obtain further information. Walters explained to the juvenile court that he monitored some of the visits between Father and child. He observed that Father was high during at least two visits, and he took that to mean Father was not

addressing the goal of getting his substance abuse under control. No evidence was presented to contradict Walters's observation during trial.

{¶ 35} As far as Father's living and work situations, the only testimony at trial was that Father had been homeless throughout the pendency of the case and that he had not provided verifiable proof of income. Walters testified that he did not refer Father for housing assistance. There is no evidence in the record that Father ever obtained or maintained housing. Father also failed to provide evidence of employment. Walters testified that Father texted him a snapshot with alleged check stubs that were not verifiable. He asked Father to provide better documentation; however, Father did not do so.

{¶ 36} There was clear and convincing evidence that Father was unwilling or unable to provide food, clothing, shelter, and other necessities for the child and to prevent the child from suffering emotional mental neglect as evidenced by his unwillingness to complete a case plan. Although Father attended visits towards the later stages of her time in custody, there was clear and convincing evidence that Father neglected the child between the date the original complaint was filed and the date of the filing of the motion by failing to regularly visit, communicate, and support the child. Thereby there was clear and convincing evidence presented to support the juvenile court's finding that the child could not be placed with either parent within a reasonable time, satisfying the first prong of the permanent custody determination.

## Second Prong:  R.C. 2151.414(D)

**{¶ 37}** The second prong requires the juvenile court to assess whether it has been established by clear and convincing evidence, that granting permanent custody to the agency is in the best interest of the child.  We review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion.  *In re D.A.,* 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.  In this regard, "[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

**{¶ 38}** R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child * * *;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 39}** The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at *id.* "The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. "There is not one element that is given greater weight than the others pursuant to the statute." *Id.*

**{¶ 40}** In the instant case, the juvenile court noted that it had considered all of the factors contained in R.C. 2151.414(D)(1) and determined that a grant of permanent custody was in the best interests of the child and that the child could not be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

**{¶ 41}** However, Father argues that clear and convincing evidence was not presented showing that permanent custody was in the best interest of the child. We disagree. The evidence showed that T.S. was well bonded with her siblings and appeared to be bonded with Father. T.S. has had difficulties in foster care, but is currently in a placement with her older sister, T.W., and has begun to improve. Rhynard testified that the children flip-flopped between wanting to be with Mother and wanting to stay in their current placements. There was no testimony regarding T.S.'s wishes concerning Father. At the time the motion for permanent custody was filed, the child had been in custody approximately ten months of the past 22 consecutive months.[3] During custody, the child has been in multiple placements.

---

[3] At the time of the dispositional hearing, the child and her siblings had been in custody over two years.

She has displayed increasingly volatile behavior and suffers from PTSD and depression. Rhynard indicated that T.S. is in need of a permanent placement and that neither parent was in a position to provide that placement in a reasonable amount of time, nor were they equipped to address T.S.'s issues.

{¶ 42} After considering all relevant factors pursuant to R.C. 2151.414(D)(1), the juvenile court determined by clear and convincing evidence that a grant of permanent custody was in the best interests of the child. Our review reflects that this determination was supported by competent, credible evidence in the record.

{¶ 43} In addition to the findings in R.C. 2151.414(D)(1), the juvenile court explicitly found that all the findings in R.C. 2151.414(D)(2)(a)-(d) were present in this case. When all those factors apply, R.C. 2151.414(D)(2) necessitates a determination that "permanent custody is in the best interest of the child" and requires that the court "shall commit the child to the permanent custody of a public children services agency * * *." The juvenile court found as follows:

> The Court further finds that the child has been in the agency's custody for two years and no longer qualifies for temporary custody pursuant to division (b) of section 2151.415 of the Revised Code;
>
> That one or more of the factors in division (E) of section 2151.414 of the Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent.
>
> The child does not meet the requirements of a planned permanent living arrangement pursuant to division (A)(6) of section 2151.353 of the Revised Code and that prior to the dispositional hearing, no relative or other interested person has filed or has been identified in a motion for legal custody of the child.

{¶ 44} The juvenile court included explicit findings under R.C. 2151.414(E) and determined by clear and convincing evidence that "the child cannot be placed with either [her mother or her father] within a reasonable time or should not be placed with either [the mother or the father]." Specifically, the juvenile court found as follows with respect to the child and Father:

> Following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the mother and father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside of the child's home.
>
> Father has a chemical dependency that is so severe that it makes him unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the Court holds the hearing in this matter.
>
> Father has neglected the child between the date of the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, and support the child.
>
> Father has demonstrated a lack of commitment towards the child by failing to regularly support, visit, communicate with the child when able to do so.
>
> Father is unwilling to provide food, clothing, shelter, and other necessities for the child or to prevent the child from suffering emotional mental neglect, as evidenced by his unwillingness to successfully complete a case plan so he can provide care for the child.

{¶ 45} Our review reflects that the juvenile court's findings were supported by competent, credible evidence in the record. Because all the factors under R.C. 2151.414(D)(2) apply, permanent custody was necessarily in the best interest of the child, and the trial court was required to grant permanent custody to CCDCFS. Father's first assignment of error is overruled.

{¶ 46} In his second assignment of error, Father argues that this matter should have been continued due to COVID-19. "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). However, Father did not request a continuance of the hearing or raise COVID-19 restrictions below. It is well settled those issues not raised in the trial court may not be raised for the first time on appeal. *State v. Goodwin*, 8th Dist. Cuyahoga No. 109352, 2020-Ohio-5187, ¶ 14, citing *State v. Geiger*, 10th Dist. Franklin No. 15AP-1120, 2016-Ohio-7571, ¶ 12.

{¶ 47} Where a party has failed to object to an issue they subsequently raise on appeal, we may consider it if it rises to the level of plain error. *Young v. Young*, 10th Dist. Franklin No. 11AP-114, 2011-Ohio-5060, ¶ 12, citing *Thomas v. Early,* 10th Dist. Franklin No. 05AP-236, 2005-Ohio-4551, ¶16. In discussing plain error in a civil case, the Supreme Court noted "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997). As the case had been active since 2016, and the motion for permanent custody was filed well before COVID-19 became an issue, we do not find that a manifest injustice occurred when the juvenile court did not continue this matter.

{¶ 48} As Father did not request a continuance or raise the issue of COVID-19 restrictions, we summarily overrule Father's second assignment of error.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR